No. 24780.

THE PEOPLE OF THE STATE OF COLORADO *v.*
MAURICE L. HILES.
(474 P.2d 153)

Decided September 8, 1970.

Floyd Marks, District Attorney Seventeenth Judicial District, S. Morris Lubow, Deputy, for plaintiff-appellee.

Joseph R. Quinn, Assistant State Public Defender, Allen I. Lipson, Deputy, Lawrence J. Schoenwald, Deputy, for defendant-appellant.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

 This is an interlocutory appeal from a decision of the district court of Adams County denying defendant Maurice L. Hiles' motion to suppress a statement made by him to interrogating officers following his arrest for the crime of indecent liberties.

Defendant contends that he did not knowingly or intelligently waive his right to counsel during the interrogation. Additionally, in a supplemental brief, defendant asserts, *inter alia,* that he could not voluntarily, knowingly, and intelligently waive his privilege against self-incrimination because he was not warned that anything he said could be used against him in a court of law. He further contends that he was never told, and did not understand, that an attorney would be appointed for him prior to questioning if he so desired.

A hearing was held in the trial court on the motion to suppress. The trial court, on conflicting evidence, found that defendant's waiver of counsel was freely and voluntarily given, and that the statement sought to be suppressed was voluntarily given. We agree.

Defendant was arrested on March 3, 1970, at approximately 4:15 p.m. He was taken to the Adams County jail where he was booked and processed until approximately 5 p.m., after which time he was questioned by

one Earl Molden and also the chief investigator, Bert Johnson. They testified that the interrogation continued until 7:15 or 7:30, during which time the statement sought to be suppressed was given.

Defendant was employed as a foreman in a chemical plant and has the equivalent of a high school education. When taken into custody, witness Molden said, defendant indicated that he wished to speak to the investigators about the offenses charged. Molden testified that he then advised defendant of his constitutional rights by reading them from an instruction card. He then asked defendant if he understood his rights and if he wished to waive his right to have an attorney present. Molden stated that although defendant appeared to understand his rights he did not answer the question whether he wished to have an attorney present. According to Molden, Hiles ignored the question and proceeded to ask Molden about the case. Molden stated that he informed defendant of the charges against him and who had filed them, but he stated to defendant that he could not and would not further discuss the case unless defendant waived his right to have an attorney present. Thirty or forty minutes passed during which time defendant continued to indicate that he wished to talk about the case and the investigators continued to refuse to do so without defendant's acknowledgment that he understood his rights and wanted to waive them. Then defendant verbally agreed not to have an attorney present and to discuss the case.

Although the questioning took place during the dinner hour, the defendant was offered food and he refused it. He did request milk which was brought to him. Although the investigators were with the defendant for about two and a half hours, that time included several breaks during which time questioning was not conducted and more than an hour of that time was used by the defendant to make the written statement which is sought to be suppressed. . Before making his written statement defendant signed

an advisement form acknowledging that he had been advised of his rights and that he waived them. Under each question on the printed form concerning his understanding of his rights defendant wrote "yes" and he wrote "yes" to the question pertaining to the waiver of an attorney being present during the answering of questions.

The statement consists of five signed pages with the questions written by Molden and each answer set out in the handwriting of the defendant.

Defendant's version of the interrogation conflicts with that of Molden. He testified that he was arrested at 2:30 p.m. and that interrogation was begun at 4 at the latest. He further testified that he was never told that a lawyer could be appointed for him during the questioning, though he told the investigators he could not afford a lawyer. Defendant stated that not knowing that he could have a lawyer and believing that the officers intended to keep questioning him until he made a confession, he decided to answer their questions. He stated that he kept telling the investigators that he did not want to make a statement, but that he finally agreed to write answers to written questions. He further testified that he never orally agreed to answer questions. He testified that Molden had, at the outset, orally advised him of his rights and that his handwriting did appear on the written advisement of rights, but that he was unable to read it because of nervousness. He testified that Molden read it to him, but he did not really understand it.

Defendant contends that he made an express or implied claim of privilege by not answering the question of whether he understood his rights and wished to make a statement without an attorney present and that the interrogation should have then ceased. He cites the following language from *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, 10 A.L.R. 3d 974, to support this position:

"Once warnings have been given, the subsequent pro-

cedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

We have been unable to find a case, and none has been cited to us, indicating that the "interrogation" referred to in *Miranda, supra,* includes questioning such as that herein where all of the preliminary interrogation was solely to ascertain if an accused understood his rights and wished to waive his right to have an attorney present. In other words, the questioning concerning the case had not begun. Defendant had indicated a desire to discuss the case. The interrogators refused to do so unless the accused answered their questions about defendant's understanding of what was involved.

In our view a desire to remain silent cannot be implied from these facts. If the defendant had wished to remain silent in the absence of an attorney, he had only to say so or merely be silent. Instead — according to the investigators — he asked questions about the case and said that he wished to discuss it with them.

While the testimony is conflicting as to whether defendant verbally waived his right, the trial court found the facts to be as stated by Molden.

The trial court noted after hearing the evidence:

"All he had to say was 'I don't want to talk about the case,' and that would have been the end of it, but he wanted to talk about the case and when he talked about the case, he made this statement. * * *"

Defendant further argues that his silence during this 30 or 40 minute period should be construed as a request for counsel. The evidence is that at no time did he ask for counsel. His assertion that he did not know that counsel could be appointed for him was not believed by the trial judge, nor is it supported by the evidence which shows an advisement of his rights prior to questioning and again prior to the taking of the written statement.

This was a hearing fully in accord with the requirements of *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908, and at this stage of the proceedings the court is the trier of fact. The total testimony, including that of chief investigator Johnson, who was a witness for the defendant, supports the ruling of the trial court. *See People of State of Colorado v. Kelley,* 172 Colo. 39, 470 P.2d 32.

The order denying the motion to suppress is affirmed.

MR. JUSTICE LEE not participating.