No. 24907

The People of the State of Colorado v.
Edward Lee Smith, a/k/a James E. Fitzgerald
(500 P.2d 1177)

Decided September 18, 1972.

414

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Eugene C. Cavaliere, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Thomas M. Van Cleave III, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

██ Edward Lee Smith has appealed his conviction and the sentence of life imprisonment that followed a jury verdict. An information charging the defendant with murder (C.R.S. 1963, 40-2-3) was filed in the district court of El Paso County On October 27, 1969. The evidence which supports his conviction is largely circumstantial. More than forty witnesses were called in the course of the trial, and the sufficiency of the evidence to support the jury's verdict is the primary issue. The record convinces us that the trial court properly denied the defendant's motion for judgment of acquittal and submitted the case to the jury. *See McClendon v. People,* 174 Colo. 7, 481 P.2d 715 (1971). Additional grounds for reversal which the defendant has raised are without merit. We, therefore, affirm the conviction.

The Factual Background

At approximately 7:00 p.m. on October 17, 1969, Leo Katz, the proprietor of a pawnshop known as Leo's Loans, was found dead. He had been shot in the chest with a .22 caliber firearm, and the police investigation developed that money and various items of jewelry had been taken from the pawnshop. On October 23, 1969, another pawnbroker became suspicious when the defendant attempted to pawn two women's watches and five rings. He asked the defendant for additional identification and notified the police. When the defendant returned to complete his loan, an arrest was made. Immediately thereafter, the defendant was advised of his rights in compliance with the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *People v. Hiles,* 172 Colo. 463, 474 P.2d 153 (1970);

*Nez v. People,* 167 Colo. 23, 445 P.2d 68 (1968). He was interrogated by the police and asked if he wanted to take a lie detector test. When he was brought before the lie detector expert for tests, he was again advised of his rights. The defendant then said that he desired to talk to a lawyer before he took the lie detector test. Interrogation ceased at that point, and the defendant was taken back to his cell.

In a preliminary statement, the defendant told the police that the jewelry which he had sought to pawn belonged to his common law wife, Velma Lee Wright. He also said that Wendell Thomas gave his wife the jewelry that was in his possession at the time of his arrest. In his initial statement, he also implicated Wendell Thomas in the crime. Thereafter, on the basis of the defendant's statement, Wendell Thomas was arrested. Wendell Thomas was then brought before his accuser and gave the police a statement. The police then told the defendant that neither Velma Lee Wright nor Wendell Thomas had said anything that helped him. At that point, the defendant volunteered to immediately take a lie detector test. Shortly after the test was given, the defendant made a full statement which he repeated, in essence, as his theory of defense when he testified during the trial.

Before the statement was admitted into evidence at the trial, a full *Jackson-Denno* [378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)] hearing was held. *Whitman v. People,* 170 Colo. 189, 460 P.2d 767 (1969); *Compton v. People,* 166 Colo. 419, 444 P.2d 263 (1968). In brief, the defendant claimed that psychological pressure which was imposed upon him by the police caused him to confess to his part in the robbery-murder. The trial judge heard conflicting testimony at the *Jackson-Denno* [*supra*] hearing and resolved that the statement was voluntary and was admissible.

While still *in camera* defense counsel advised the court that he was going to bring out the sequence of events which preceded the statement to establish that the statement was involuntary and was the product of the lie detector test. The district attorney, in direct examination of the police officer who performed the lie detector test, identified him as a lie

detector expert and made some reference to the test. Thereafter, in order to protect the defendant, the court promptly gave the following cautionary instruction and repeated it to the jury in the court's final charge:

"A polygraph test is also known as a lie detector test. The courts throughout Colorado and throughout the United States in general have found or have held that the scientific value of the polygraph test at the present time is not and has not been proven to a degree making it available for evidence in courts of law.

"For this reason I am instructing you that although you may hear evidence of certain things that took place in the polygraph room, you are advised that any polygraph test that may or may not have been given is not evidence in this case be it for or against the Defendant, and for this reason you are to disregard and strike any evidence concerning a polygram or polygraph test.

"I will give you a written instruction to this effect at the termination of this trial . . . ." [ff. 1225-1226]

Instruction No. 14:

"You are instructed that polygraph tests, also known as lie detector tests, are held not to have enough scientific value in the United States to be considered as evidence. For this reason you are instructed that although certain references in this case were made to polygraph tests or polygraph room, you are not to consider the polygraph test for any purpose whatever either for or against this defendant. You are instructed to disregard any evidence concerning the polygraph test." [f. 137]

## I.
### Sufficiency of the Evidence

Piecing together the evidence, it appears that the defendant drove Wendell Thomas to a place near the pawnshop known as Leo's Loans. He had talked to Freddie James Lewis and had advised Lewis that he and Thomas were going to "pull a score" and asked if he desired to participate. After the crime was perpetrated, the defendant told Lewis that a "hassel" developed and that they had been forced to "down

him." Later, he said Wendell Thomas had to "down him." Lewis also testified that following the robbery-murder, the defendant gave him a gun and told him to get rid of it. The gun was identified as a .22 caliber revolver, and a ballistics expert was able to identify the gun as being capable of having fired the fatal bullet. The gun was located by the police approximately a week after the shooting in a lake and at approximately the same location where Lewis said he had thrown it. Charles Ballard identified the gun which was taken from the lake as the one that he sold to the defendant approximately a week before the crime. A cellmate of the defendant also provided evidence of guilt by testifying to statements that the defendant had made to him indicating his participation in the crime.

Velma Wright testified that on the day that the crime was committed, the defendant and Wendell Thomas divided the jewelry and that Thomas gave her some jewelry. The defendant admitted that at the time the jewelry was divided, he received $105 from Thomas. To justify receipt of the jewelry and the money, the defendant testified that he stayed outside of the pawnshop while the crime was committed and said that his acts showed his lack of participation in the robbery-murder.

## II.
### Admissibility of the Statement

It is undisputed that the defendant was given the full *Miranda* warning on numerous occasions. *Miranda v. Arizona, supra.* The crucial issue is whether the defendants' request to have an attorney before a lie detector test was conducted foreclosed the police from offering testimony about statements that were volunteered by the defendant after he came face-to-face with Wendell Thomas. The statements made by the defendant were not in response to interrogation but were volunteered and, hence, are admissible. *Miranda v. Arizona, supra; Olguin v. People,* 179 Colo. 26, 497 P.2d 1254 (1972); *Goddard v. People,* 172 Colo. 498, 474 P.2d 210 (1970). In our opinion, the court conducted a proper *Jackson-Denno [supra]* hearing to determine whether the defendant's state-

ments were voluntary. *Whitman v. People, supra; Compton v. People, supra.* In conducting the *Jackson-Denno [supra]* hearing, the court heard extensive testimony and determined that the defendant's statements were admissible and that the weight to be given the statements was for the jury.

■ In *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), the Supreme Court of the United States clarified the constitutional dimensions of *Jackson v. Denno, supra.* The Supreme Court, in *Lego v. Twomey, supra,* held that the trial judge only had to find that a defendant's statement was voluntary by a preponderance of the evidence to justify submission of the statement to the jury, thereby depriving our decision of *People v. Kelley,* 172 Colo. 39, 470 P.2d 32 (1970), of its vitality. From the record, it is clear that the evidence presented to the trial court more than met the requirements of *Lego v. Twomey, supra,* and we will not substitute our judgment for that of the trial court.

### III.
### The Polygraph

■ The *in camera* hearing brought out the dangers relating to testimony before the jury on the sequence of events that culminated in the statement. The prosecution endeavored to foreclose error by eliminating any reference to the polygraph, but defense counsel indicated his desire to have evidence presented that there was a polygraph test, without announcing the result, for the purpose of determining the voluntariness of the confession. Under the circumstances, a mistrial is not indicated. The error which is complained of lies immediately at the door of defense counsel and was an attempt to create or invite error. *Cowles v. People,* 107 Colo. 161, 110 P.2d 249 (1941). When reference was made to a polygraph, the court made every effort to protect the jury from counsel's error. We must presume that the jury abided by the court's instruction. No reference was made as to the results of the polygraph test, and we cannot presume error. *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500, 77 S.Ct. 443, 1

L.Ed.2d 493 (1957); *Segura v. People,* 159 Colo. 371, 412 P.2d 227 (1966). Moreover, this issue was not properly preserved in the motion for a new trial.

We have examined the remaining errors which are urged as a basis for reversal and find them to be without merit.

Accordingly, we affirm.

MR. JUSTICE KELLEY and MR. JUSTICE LEE not participating.