**No. 27690**

**The People of the State of Colorado v. Randy Allen Richards**

(568 P.2d 1173)

Decided September 26, 1977.

Terrance L. Farina, District Attorney, James R. Alvillar, Deputy, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Edward A. Lipton, Deputy, for defendant-appellee.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This is an appeal by the District Attorney of the Twentieth Judicial District from an order of the district court granting defendant's motion to suppress certain statements which defendant made to the police following his arrest. We affirm the ruling of the district court.

At the suppression hearing, Officer Douglas Rushing of the Grand Junction Police Department testified that he had conducted an investigation concerning the rape of a twelve-year-old girl. On June 28, 1976, the girl and her seven-year-old brother were given a ride by a stranger and taken to the "canal" where she was forced to have oral sex and then raped. The police produced a composite drawing of the assailant on the basis of a description given them by the victim.

On July 13, 1976, the girl reported seeing her assailant at a Grand Junction liquor store but the assailant was gone by the time police arrived. A stake-out of the premises proved fruitless and the investigation was deactivated on August 23, 1976, for want of any new leads. A few weeks

later, however, on September 12, 1976, the victim reported to the police that her assailant was standing in front of a Grand Junction convenience store. Officer Jackson arrived at the store and contacted the victim and her mother who were in the vicinity. The victim's mother explained to Jackson that her daughter had been raped several months earlier. At that time, the girl pointed out her assailant who was standing some 50 to 75 feet away. After Jackson received a radioed report of the girl's earlier description of her assailant, he made contact with the defendant who was identified as Randy Allen Richards.

Richards was searched, handcuffed, placed in a patrol unit, and transported to the Mesa County Jail. While being transported, Jackson advised him of his *Miranda* rights. After the admonitions were given, Jackson asked Richards "if he understood all those rights?" Richards acknowledged verbally that he did. Jackson then asked if "he wished to talk to me after having those rights in mind." At that point, however, Richards stated that he would "rather talk to an attorney first." There was no questioning. The time was approximately 8:30 p.m.

Jackson testified that after booking the defendant into the Mesa County Jail, he indicated to Richards that "if he [Richards] felt like talking, I would be glad to listen." Richards responded, according to Jackson, by stating that "he would like to talk to me." The time of this conversation was approximately 9:15 or 9:20 p.m. Before the interrogation began, Richards was readvised of his rights, both orally and in writing, by Jackson. A statement was obtained at approximately 9:30 p.m.

## I.

■ The basic issue before this court is whether the methods employed by police in obtaining defendant's statement violated the defendant's rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A threshold issue, however, is whether the defendant initially sought to exercise any of the rights guaranteed by *Miranda*. In response to Officer Jackson's first attempt to obtain a statement, the defendant replied that he "would rather talk to an attorney first." The trial court found that this constituted an "unequivocal request for counsel." We agree with this conclusion. As we noted in *People v. Harris*, 191 Colo. 234, 552 P.2d 10 (1976), a demand for counsel need not be "sophisticated," or in a "legally proper form." Moreover, the language the defendant used is nearly identical to the language in the written advisement form provided him by the police.[1] There is little doubt that defendant sought to exercise his right to counsel per *Miranda*.

---

[1] The form states: "You have the right *to talk to a lawyer* for advice before we ask you any questions and to have him with you during questioning. . . ." (Emphasis supplied.)

■ This court has repeatedly held, consonant with the United States Supreme Court's direction in *Miranda*, that once an accused asks for counsel all questioning must end:

"The defendant made a request for an attorney, and the police officers were thereby placed on notice that the defendant intended to exercise his constitutional rights. . . . At that point, all interrogation should have ceased until an attorney was made available to the accused." *Harris, supra* at 12.

*See also, People v. Brake*, 191 Colo. 390, 553 P.2d 763 (1976). Here Richards made an unequivocal request to speak with an attorney, yet less than one hour after this request had been made, the police initiated a conversation with the accused and proceeded to interrogate him. This was in clear violation of the defendant's constitutional rights under *Miranda* and the trial court was correct in suppressing Richard's statement.

## II.

■ It is urged that, even assuming the defendant invoked his right to counsel, he later abandoned that right. This court has recognized the possibility of a waiver of constitutional rights under some circumstances. *See Dyett v. People*, 177 Colo. 370, 494 P.2d 94 (1972). The standard to be applied in determining the question of waiver is proof of "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). *See also, Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In applying this standard the United States Supreme Court has decreed that a heavy burden rests upon the prosecution to show a waiver of the constitutional privilege against self-incrimination and the right to counsel. *Brewer v. Williams, supra; see also People v. Harris, supra.*

■ In the case at bar, the trial court held that the prosecution failed to meet this extraordinary burden. In the absence of a clear lack of evidence in the record to support this finding, we must affirm. Here, although Richards had invoked his right to counsel, the police, some 45 minutes later, made a second, albeit subtle attempt to elicit information from him. There is nothing in the record to suggest that Officer Jackson's decision to approach the defendant for information a second time was prompted by any manifestation on the part of the defendant that he had changed his mind and desired to be interrogated without the assistance of counsel. These factors support the trial court's finding that the defendant had not waived his right to an attorney. *See United States v. Clark*, 499 F.2d 802 (4th Cir. 1974).

Moreover, the absence of any overt psychological pressure on the part of the police is not determinative. As the Supreme Court stated in *Miranda*, the "pressure" exerted during interrogation comes from the very nature of incommunicado custodial interrogation of individuals in a police-dominated atmosphere. The "pressure" here came from Officer

Jackson's attempts to get the defendant to "talk" to him. While Officer Jackson's approach did not initially take the form of direct questioning, the only possible object of the officer's remarks was to elicit a confession from the defendant. If the police may try to subtly secure a waiver of rights after the accused has requested an attorney, the rights guaranteed by *Miranda* would be illusory.

The ruling of the district court is affirmed.