### No. 28058

**The People of the State of Colorado v. Loren "Beezer" Conner**
(579 P.2d 1160)

Decided June 12, 1978.

William D. Harmsen, District Attorney, Reid Pixler, Deputy, for plaintiff-appellant.

John A. Purvis, State Public Defender, Craig L. Truman, Chief Deputy, Edward A. Lipton, Deputy, for defendant-appellee.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an interlocutory appeal by the People from a ruling by the trial court suppressing certain oral statements and a written statement subscribed to by the defendant. The oral statements were made by the defendant prior to his arrest and prior to an advisement of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The written statement followed his arrest and the acknowledgment on another advisement form that he had received the *Miranda* warning and understood the import thereof.

The court suppressed the oral statements based on the finding that the defendant was in custody at the time they were made and had not been given *Miranda* warnings. The subsequent signed statement was suppressed because the court found it to be "tainted by the inadmissibility of the earlier statements" and for the further reason that the defendant had not made an effective waiver to his right to counsel prior to signing the statement. On the basis of the record before us, we reverse the ruling of the trial court.

Late in the afternoon of July 1, 1977, Fred Pace, Sheriff of Delta County, received a telephone call from Mary Conner, wife of the defendant. Mrs. Conner called to report a shooting incident which had occurred on the Conners' property earlier that afternoon. She asked the sheriff to investigate. The sheriff thereupon dispatched Lieutenant Brown and Sergeant Fariello to conduct the investigation.

When Brown and Fariello arrived at the Conner property, they were met in the yard by the defendant. He immediately proceeded to advise the officers that he had been fired upon by someone while he was on his own property and that he had returned the fire. Defendant claimed that the shots had come from a pickup truck which appeared to have been abandoned on a ditch bank some three to four hundred yards from the defendant's house. The oral statements which were suppressed were all made at this stage of the investigation.

At the suggestion of the defendant, the officers, accompanied by the defendant, drove to the location of the abandoned pickup. The abandoned pickup sat adjacent to an irrigation ditch which carried a stream of water. The banks and immediate adjacent area were muddy. Lieutenant Brown

directed the defendant to stand in back of the truck in order that they could conduct an investigation without any damage to whatever physical evidence might be available in the vicinity of the truck. The two officers then proceeded to investigate the alleged offense.

At this juncture, Sheriff Pace arrived on the scene, accompanied by a Mr. and Mrs. Cook, who claimed to be the owners of the pickup. They advised the sheriff's officers that they had been erecting a fence on their property along the ditch bank earlier that day and that, when they returned to collect their tools which had been left at the site, the defendant started shooting at them from his property. The Cooks claimed that they had immediately stopped their truck and jumped out of it into the nearby ditch. Mr. Cook then returned the fire by shooting twice at Conner from his position in the ditch. Also, an examination showed a bullet hole in the left front door of the pickup and the tracks of two people leading from the right door of the pickup into the irrigation ditch.

The information obtained by the sheriff's officers at the scene tended to support the Cooks' version of the incident. Lieutenant Brown concluded that there was probable cause to believe that an offense had been committed and there was probable cause to believe that it had been committed by the defenadant. Section 16-3-102(1)(c), C.R.S. 1973 (1977 Cum. Supp.). At this time, the defendant was placed under arrest and read his *Miranda* rights.

We note at this point that nowhere in the record is there any testimony that the defendant was interrogated by the officers at the site of the pickup truck before he was arrested. It is also clear from the record that any statements made by the defendant while in his yard, in the sheriff's car and at the scene of the Cooks' pickup truck were volunteered as a part of his effort to inform the officers of his version of the occurrence.

Following his arrest, the defendant was taken to the Delta County Jail where he spent perhaps a half hour in being booked, and then he was charged with second-degree assault. Section 18-3-203(b), C.R.S. 1973.

After being booked, defendant was given a written advisement of *Miranda* rights by the sheriff. Defendant signed the advisement form and acknowledged that he understood those rights. He was then questioned by a deputy district attorney. The answers to those questions were reduced to writing by the deputy district attorney after which the defendant read, corrected, initialed the correction and signed the statement voluntarily. He testified at the suppression hearing that no promises were made to him and that he was not coerced in any way in making his signed statement.

In *People v. Parada,* 188 Colo. 230, 533 P.2d 1121 (1975), we observed:

"In *Miranda v. Arizonz,* (cite omitted), the Supreme Court articulated a series of warnings to be given to protect a suspect's fifth amendment rights in the inherently coercive atmosphere of a custodial interrogation.

Therefore, whether *Miranda* warnings are required in a particular situation depends on a threshhold determination that the interrogation is 'custodial.' While 'custodial' does not necessarily refer to a police station interrogation, *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311, it does require that the interrogation be conducted under circumstances where a person 'has been taken into custody or otherwise deprived of his freedom of action in a significant way.'"

&#9646;&#9646; The record is uncontradicted that the defendant was not in custody nor otherwise deprived of his freedom in any manner prior to the time the two officers and the defendant got into the officers' car to go to the location of the pickup truck. Under the facts of this case, the suppressed oral statements were made as part of the initial investigation and, as a matter of law, did not constitute custodial interrogation. *People v. Parada, supra,* and cases cited therein. Also, since the oral statements were not tainted, it follows that they cannot be the basis for the suppression of the subsequent written statement under the "fruit of the poisonous tree" doctrine. *See Wong Sun v. U.S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

We turn now to the court's second basis for the suppression of the signed written statement. This, it will be recalled, was the statement prepared by the deputy district attorney as the result of his interrogation of the defendant after he was booked and in custody. Following his booking, the deputy district attorney read the defendant the *Miranda* warnings. The defendant acknowledged that he understood what those rights meant and then freely signed a waiver of counsel, agreeing to talk to the deputy district attorney. The defendant admitted that there were no promises made to him, nor was there any police coercion. *See People v. Richards,* 194 Colo. 83, 568 P.2d 1173 (1977).

&#9646; In spite of this factual background, the defendant asserted at the suppression hearing, and the trial court ruled, that the defendant had not effectively waived his right to counsel. We do not agree.

The totality of the circumstances, including the absence of a request for counsel, a lack of evidence of police coercion, and the signing of a written waiver, establishes that there was a waiver of the right to counsel. *Duncan v. People,* 178 Colo. 314, 497 P.2d 1029 (1972); *Jaggers v. People,* 174 Colo. 430, 484 P.2d 796 (1971).

Accordingly, the ruling of the trial judge is reversed and the cause is remanded to the trial court for further proceedings.

MR. JUSTICE CARRIGAN does not participate.