The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Richard Austin PIERSON, Defendant-Appellant.

No. 77–1035.

Colorado Court of Appeals, Div. II.

April 2, 1981.

Rehearing Denied April 23, 1981.

Certiorari Granted Sept. 21, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Stephen M. Munsinger, Designated Counsel, Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Nicholas R. Massaro, Jr., Deputy State Public Defender, Grand Junction, for defendant-appellant.

SMITH, Judge.

Defendant, Richard Austin Pierson, appeals his conviction of first degree murder. We reverse and remand for a new trial.

On March 14, 1977, defendant telephoned the police and reported that one Charles Schubert had committed suicide in defendant's apartment. When police arrived, they found Schubert dead of a single gunshot wound. Defendant was placed under arrest for investigation of homicide and taken to the Boulder County Criminal Justice Center. Upon his arrival, the defendant was advised of his constitutional rights, and was also given a written advisement form upon which he indicated that he understood his rights but that he chose not to waive them, or to make any statement or answer any questions. Defendant thereafter called his parents and requested that they obtain a lawyer for him.

Following the defendant's assertion that he desired to exercise his Fifth and Sixth Amendment rights, Officer Sinclair administered a barium antimony test on defendant's hands to determine if he had recently fired a gun. The results of the test were negative; however, during the course of the test the officer elicited certain statements from the defendant.

Shortly after incarcerating the defendant, the police learned that the defendant had a history of mental illness. Upon the defendant's request, several doctors examined him and prescribed various medications for his psychological disorders. At trial, one of the treating physicians, a specialist in neuropsychiatry, testified that it was his opinion that any statement defendant made during the time during which he was taking any of these medications would be totally unreliable.

In recognition of defendant's mental status, on March 24, 1977, defense counsel filed a motion for protective orders in which counsel requested that the court prohibit the police from talking with the defendant

unless defense counsel was present. This motion was denied by the court. However, at the hearing on the motion the district attorney advised the court that the Boulder Police Department would notify defense counsel prior to any subsequent interview of the defendant. We view this position by the district attorney as recognizing a continuing request by the defendant under *People v. Osborn*, 42 Colo.App. 376, 599 P.2d 937 (1979). This procedure, however, was not followed by the Boulder police officers.

On June 23, 1977, the defendant asked to speak with one Detective Epp, about a burglary which defendant had reported on March 12, 1977. On June 28, 1977, Detective Epp and Officer Sinclair pursuant to that request met with the defendant at the jail. This interview began at approximately 8:30 p. m. and concluded at approximately 10:00 p. m. It began with an advisement of rights, and a discussion of the burglary. However, shortly thereafter, the topic of conversation changed from the burglary to the alleged murder. Initially, defendant denied responsibility for Schubert's death, but later, after repeated accusations by the interrogators, the defendant made certain inculpatory statements.

At trial, defendant moved to have the statements made on March 14, 1977, and the statements made on June 28, 1977, suppressed on the grounds that they were obtained in violation of his Fifth and Sixth Amendment rights. The trial court denied defendant's motion, finding that the statements made on March 14, were volunteered by the defendant and were therefore admissible. In regard to the June 28, 1977, statements, the trial court found that these were voluntary and were obtained as a result of "routine police interrogation." Both sets of statements were subsequently introduced into the trial which culminated in the conviction of the defendant.

### The March 14th Statements

■ Defendant contends that the statements made to Officer Sinclair at the police station on March 14, 1977, after he had indicated that he intended to exercise his Fifth Amendment privilege, although exculpatory, should have been suppressed. We agree.

■ Consistent with the United States Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), our Supreme Court has held on numerous occasions that once the accused has asked for counsel, questioning by law enforcement officers must be terminated immediately and may not be resumed until counsel is present. *See, e. g., People v. Richards*, 194 Colo. 83, 568 P.2d 1173 (1977); *People v. Harris*, 191 Colo. 234, 552 P.2d 10 (1976). Further, once the accused has requested counsel, any statements made in response to further interrogation by the law enforcement officers are inadmissible. *People v. Osborn, supra*.

Here, defendant made an unequivocal request to speak with an attorney, yet closely following this request, Officer Sinclair initiated a conversation with the accused, and proceeded to interrogate him. Although Officer Sinclair testified that the statements made during the administration of the barium antimony test were volunteered by the defendant, the record does not support this conclusion.

At the outset, it is important to note that Sinclair's involvement in defendant's case was not limited to performing the barium antimony test. Sinclair testified that he talked with fellow officers at the scene of the shooting, was dispatched to the police station to talk with the defendant about the incident, and furthermore, was present when the defendant was advised of his *Miranda* rights. This officer was on notice that the defendant desired to exercise his constitutional rights not to be questioned or to give any statements except in the presence of his counsel. The failure of the officer to honor this request by questioning the defendant during the performance of the test violated the defendant's constitutional rights under *Miranda v. Arizona, supra*. Therefore, we conclude that the trial court erred in failing to suppress any statements made by the defendant while the barium antimony powder residue test was being administered.

### The June 28th Statements

■ Defendant next contends that statements obtained from him when he was interviewed by police officers on June 28, 1977, in the absence of his attorney, contrary to an agreement that had been reached between defense counsel and the district attorney that the police would not question the defendant unless the defendant's counsel was present, deprived him of his Sixth Amendment right to effective assistance of counsel. We agree.

As previously stated, the district court denied defendant's motion to suppress the statements obtained during the June 28, 1977, interview on the grounds that the defendant waived his rights to counsel and no undue pressure was used by police during the interview.

The right to counsel, guaranteed by the Sixth and Fourteenth Amendments, is indispensable to the fair administration of our adversary system of criminal justice. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Its vital need at the interrogation stage was succinctly explained by Chief Justice Warren in *Miranda v. Arizona, supra:*

"That counsel is present when statements are taken from an individual during interrogation obviously enhances the integrity of the fact-finding processes in court. The presence of an attorney, and the warnings delivered to the individual, enable the defendant under otherwise compelling circumstances to tell his story without fear, effectively, and in a way that eliminates the evils in the interrogation process. Without the protections flowing from adequate warnings and the rights of counsel, 'all the careful safeguards erected around the giving of testimony, whether by an accused or any other witness, would become empty formalities in a procedure where the most compelling possible evidence of guilt, a confession, would have already been obtained at the unsupervised pleasure of the police.' "

Here, although the defendant initially requested an interview with police officers for the *sole* purpose of discussing a burglary which he had reported, the attending officers availed themselves of the opportunity to interrogate the defendant concerning the attempted murder. The police officers did not re-advise the defendant of his rights pursuant to *Miranda, supra* when the conversation changed from the burglary, concerning which he did not consider himself a suspect, to the murder, of which he had been accused. At the suppression hearing, Detective Epp admitted that he applied pressure on the defendant throughout the interrogation even though Epp knew that the defendant had been hospitalized for mental illness. This interrogation was in direct violation of the agreement between the district attorney and defense counsel. And, a review of the record here discloses no facts to support the conclusion of the trial court that Pierson had waived his constitutional rights to the assistance of counsel.

■ The right to counsel under the Sixth Amendment, particularly in light of the Fifth Amendment privilege includes not merely the right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires. Thus, it is our view that once a criminal defendant has either retained an attorney, or had an attorney appointed for him by the court, any statement obtained by interview from such defendant may not be offered into evidence for any purpose unless the accused's attorney has been notified of the pending interview and given a reasonable opportunity to be present, *United States v. Thomas,* 474 F.2d 110 (10th Cir. 1973), or unless the defendant has *expressly* waived his right to have his attorney present during the specific questioning session at which the statement is obtained. Here, when the police officers ended the discussion with defendant regarding the burglary, of which he was the victim, and began interrogating him again concerning the murder of which he was accused, they neither sought nor obtained such a waiver. In point of fact, they did not even re-advise him, at that

juncture, that he had the right to have his attorney present during the interrogation.

Accordingly, the statements should have been suppressed and their admission into evidence at the trial constituted reversible error.

The judgment is reversed and the cause is remanded for a new trial.

PIERCE, J., concurs.

STERNBERG, J., specially concurs.

STERNBERG, Judge, specially concurring:

I agree with the majority's conclusion that the conviction should be reversed. However, I would admit the March 14 statement because it was not in response to interrogation. *See People v. Lowe*, Colo., 616 P.2d 118 (1980). I do agree that the June 28 statement should have been suppressed.

In my view, the majority goes too far in adopting a *per se* rule that, absent an express waiver, any statement made by a criminal defendant represented by counsel must be suppressed unless his attorney is notified that the accused is about to be interviewed and given a reasonable opportunity to be present. Instead, I would suppress the June 28 statement because under the totality of circumstances, a valid waiver of the right to representation was not shown.

Adoption of such a *per se* rule as set out in *United States v. Thomas*, 474 F.2d 110 (10th Cir. 1973), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973), cited by the majority, is unnecessary, undesirable, and contrary to authority in this jurisdiction. In a case dealing with a statement made after a defendant had received his *Miranda* warnings and requested an attorney, the Colorado Supreme Court recently stated that: "[W]e do not rule out the possibility of a valid waiver after the defendant has requested an attorney." *People v. Traubert*, Colo., 608 P.2d 342 (1980). *See also People v. Stephens*, 188 Colo. 8, 532 P.2d 728 (1975).

Moreover, a *per se* approach is inconsistent with other Colorado authority which indicates that in determining the validity of a waiver of the right to an attorney the totality of the circumstances must be considered. *See, e. g., People v. Davis*, 194 Colo. 466, 573 P.2d 543 (1978). The rule adopted by the majority is too broad in that it does not allow for the possibility of the totality of the circumstances demonstrating a waiver, even if one was not expressed.

Consequently, I would reverse the conviction and remand for a new trial at which only the June 8 statement would be excluded, but would not adopt the rule expressed in the majority opinion concerning statements made by a defendant after he has an attorney.