The PEOPLE of the State of Colorado, Petitioner,

v.

Richard Austin PIERSON, Respondent.

No. 81SC211.

Supreme Court of Colorado, En Banc.

Oct. 11, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., David K. Rees, Asst. Atty. Gen., Denver, for petitioner.

Massaro & Nugent, Nicholas R. Massaro, Jr., Sp. Deputy Public Defender, Grand Junction, for respondent.

ERICKSON, Chief Justice.

We granted certiorari to review *People v. Pierson*, 633 P.2d 485 (Colo.App.1981), which reversed the district court's denial of a motion to suppress statements made by the defendant at two different times and overturned Pierson's conviction for first-degree murder. We reverse the Court of Appeals in part and affirm in part, and return this case to the Court of Appeals with directions to remand to the district court for a further hearing and for a new trial.

## I.

In the early morning hours of March 14, 1977, the defendant, Richard Austin Pierson, telephoned the Boulder police department and reported that Charles Schubert had committed suicide in his apartment. After investigating the death, the police determined that Schubert had been murdered. Evidence in the apartment and statements from Pierson's girlfriend led the police to suspect Pierson of murder. Pierson was taken to the Boulder Criminal Justice Center and advised of his *Miranda* rights. He chose not to waive his rights but said that he would talk to the detectives after he consulted his attorney. Pierson was permitted to call his probation officer and his parents. He told his parents to get him a lawyer.

Thereafter, a barium antimony test was made on Pierson's hands to determine if he had recently discharged a firearm. Before the test was performed, Pierson told Detective Sinclair that he had fired a rifle the day before at 7:00 p.m. at the Colorado University rifle range and asked whether it would affect the test. Detective Sinclair responded that the test would be affected if the rifle had been shot within six hours of the test. After the test was completed, Pierson repeated his concern that the results of the test would be inaccurate. Detective Sinclair questioned Pierson about the number of shots he had fired and Pierson stated that when he borrowed the rifle it had five rounds in the clip and that he and a friend, Clay Lance, had fired fifty rounds. In response to questions about where Lance lived, Pierson gave the detective directions to Lance's apartment. Later that day, Detective Sinclair learned that Lance had been in Colorado General Hospital for the previous four or five days. Lance's testimony was used at trial to impeach Pierson's explanation of his actions on the night of Schubert's death.

Following his arrest, Pierson made numerous requests to talk to the investigating officers. In an attempt to prevent Pierson from talking, defense counsel sought a protective order to prevent the police from questioning Pierson unless counsel were present. The district court denied the request for a protective order. However, at the hearing on the motion, the district attorney advised the court that the police would notify defense counsel prior to any subsequent interview of the defendant. The police, nevertheless, talked to Pierson on numerous occasions without notifying defense counsel.

On June 23, Pierson asked to talk to a detective about the burglary of his apartment. Detectives Epp and Sinclair interviewed Pierson at the jail on June 28, and again advised him of his *Miranda* rights. Pierson said he understood the warning, and agreed to talk with the police officers. After a short discussion of the burglary, Detective Epp asked the defendant if there was anything else he wanted to talk about. Pierson responded, "Yeah, there's a lot of things I want to tell you...." He then proceeded to give the officers an account of how he had fabricated a statement he had given in the murder investigation. After the detectives repeatedly asked Pierson about the murder and questioned his veracity, he confessed that he had shot and killed Schubert.

At the hearing on the defendant's motion to suppress, Pierson testified that he had made between ten and fourteen statements, and moved to have all the statements suppressed on the grounds that they were obtained in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution. The district court suppressed all statements made between March 14 and June 28, but denied the motion to suppress the March 14 and June 28 statements. The court found that the March 14 statements were volunteered and not in response to questioning, and that the June 28 statements were obtained from the defendant after he had requested an interview and had waived his right to counsel. The court concluded that the defendant had knowingly and intelligently made the statements to the police. Subsequently, Pierson was convicted of first-degree murder and sentenced to life imprisonment.

The Court of Appeals concluded that the admission of the March 14 statement violated the defendant's Fifth Amendment *Miranda* rights and the admission of the June 28 statements deprived the defendant of his Sixth Amendment right to effective assistance of counsel and then reversed the defendant's conviction and remanded for a new trial. The Court of Appeals declared that once an accused requests counsel, any statements made without counsel present are *per se* inadmissible unless the defense attorney has been notified of the pending interview and given a reasonable opportunity to be present, or unless the defendant has expressly waived his right to counsel.

## II.

■ The *Miranda* safeguards provide an accused protection against compelled self-incrimination which is the result of custodial interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *People v. Lowe,* 200 Colo. 470, 616 P.2d 118 (1980). In *Rhode Island v. Innis,* 446 U.S. at 300–301, 100 S.Ct. at 1689–1690, the Supreme Court defined interrogation as either express questioning or its functional equivalent. The functional equivalent of

questioning consists of "any words or actions on the part of the police [other than those normally attendant to arrest and custody] that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689.

■ In our view, the March 14 statements are comprised of two distinct parts: remarks made at the defendant's initiative and direct responses to questions asked by Detective Sinclair. We believe that the defendant's initial remarks about target practicing are not the result of custodial interrogation. Pierson's initial statements were not made in response to express questioning by Detective Sinclair. The defendant initiated the conversation about target practicing and Detective Sinclair's response was not custodial interrogation. What occurred during the performance of the barium antimony test is not the equivalent of express questioning. *See People v. Sharpless,* 635 P.2d 896 (Colo.App.1981).

■ The defendant's answers to Detective Sinclair's subsequent questioning were, however, the product of custodial interrogation and were obtained in violation of the defendant's *Miranda* rights. We have repeatedly held that once an accused requests counsel all questioning must cease. *People v. Traubert,* 199 Colo. 322, 608 P.2d 342 (1980); *People v. Richards,* 194 Colo. 83, 568 P.2d 1173 (1977); *People v. Brake,* 191 Colo. 390, 553 P.2d 763 (1976). A defendant's exercise of his privilege against self-incrimination must be scrupulously honored. *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Here Pierson made an unequivocal request to talk to an attorney. Nevertheless, when Pierson expressed his concern about target practicing, Detective Sinclair began to probe and elicited incriminating information with questions directed to the number of rounds of ammunition Pierson had fired at the Colorado University firing range with Clay Lance. Pierson was also questioned about Lance's address. The record establishes that Detective Sinclair sought to obtain incriminating responses from the defendant. Detective

Sinclair should have known that his questioning was reasonably likely to elicit an incriminating response. *Rhode Island v. Innis, supra.* Accordingly, we affirm the Court of Appeals' conclusion that the defendant's responses to Detective Sinclair's questioning should have been excluded at trial. However, we conclude that Pierson's voluntary statements which were made prior to Detective Sinclair's questioning should not have been excluded.

### III.

The Court of Appeals also held that, once an accused has retained counsel, any statement obtained without counsel being present may not be admitted into evidence without an express waiver of counsel. Accordingly, the Court of Appeals held that the June 28 statement should have been suppressed.

We disagree and do not adopt the express waiver rule established by the Court of Appeals. An express waiver is not necessary to support a finding that an accused has relinquished the right to counsel guaranteed by *Miranda.* By creating an inflexible rule eliminating the possibility of an implicit waiver, the Court of Appeals has gone far beyond the requirements of *Miranda. See North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).[1] We believe the better rule to be that the validity of a waiver must be determined from the totality of the circumstances in a particular case.

The requirements for admitting statements made by an accused after invoking the right to counsel are set forth in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and *Oregon v. Bradshaw,* —— U.S. ——, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).[2] The *Edwards-Bradshaw* test requires first that the accused initiate further communication with the police. An accused initiates a conversation when his comments "evince a willingness and a desire for a generalized discussion about the investigation," and are not "merely a necessary inquiry arising out of the incidents of the custodial relationship." *Oregon v. Bradshaw,* —— U.S. at ——, 103 S.Ct. at 2835, 77 L.Ed.2d at 413. Second, the prosecution must establish that the statements initiated by the accused were preceded by a valid waiver of the right to counsel and the right to remain silent. A waiver is valid if it is a knowing and intelligent relinquishment of a known right under the totality of the circumstances which in turn is determined by "the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1937); *Edwards v. Arizona, supra; Oregon v. Bradshaw, supra.* The courts will indulge every reasonable presumption against a waiver. *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

---

1. The express waiver requirement has been rejected by every United States Court of Appeals that has considered the issue. *United States v. Monti,* 557 F.2d 899 (1st Cir.1977); *United States v. Speaks,* 453 F.2d 966 (1st Cir.1972); *United States v. Boston,* 508 F.2d 1171 (2d Cir.1974); *United States v. Cobbs,* 481 F.2d 196 (3d Cir.1973), *cert. denied,* 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973); *United States v. Stuckey,* 441 F.2d 1104 (3d Cir.1971); *Blackmon v. Blackledge,* 541 F.2d 1070 (4th Cir. 1976); *United States v. Hayes,* 385 F.2d 375 (4th Cir.1967); *United States v. Brown,* 569 F.2d 236 (5th Cir.1978); *United States v. Cavallino,* 498 F.2d 1200 (5th Cir.1974); *United States v. Montos,* 421 F.2d 215 (5th Cir.1970); *United States v. Springer,* 460 F.2d 1344 (7th Cir.1972), *cert. denied,* 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972); *United States v.*

*Ganter,* 436 F.2d 364 (7th Cir.1970); *United States v. Marchildon,* 519 F.2d 337 (8th Cir. 1975); *Hughes v. Swenson,* 452 F.2d 866 (8th Cir.1971); *United States v. Moreno-Lopez,* 466 F.2d 1205 (9th Cir.1972); *United States v. Hilliker,* 436 F.2d 101 (9th Cir.1970); *Bond v. United States,* 397 F.2d 162 (10th Cir.1968) (*but see Sullins v. United States,* 389 F.2d 985 (10th Cir.1968); *United States v. Cooper,* 163 U.S. App.D.C. 55, 499 F.2d 1060 (1974).

2. Neither *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), nor *Oregon v. Bradshaw,* —— U.S. ——, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), requires an express waiver of the right to counsel once an attorney has been requested.

After determining that a defendant has validly waived his constitutional rights, the next step is to determine whether the defendant's confession was voluntary. *People v. Fish,* 660 P.2d 505 (Colo. 1983); *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *People v. Fordyce,* 200 Colo. 153, 612 P.2d 1131 (1980); *People v. Smith,* 179 Colo. 413, 500 P.2d 1177 (1972). The burden of proof is on the prosecution to establish by a preponderance of the evidence, considering the totality of the circumstances, that the inculpatory statement was made voluntarily. *People v. Fish, supra; People v. Thorpe,* 641 P.2d 935 (Colo.1982). The trial court's findings of fact on the voluntariness of a confession will be upheld on appeal if supported by adequate evidence in the record. *People v. Thorpe,* 641 P.2d at 941; *People v. Parks,* 195 Colo. 344, 579 P.2d 76 (1978). In this case, the controversy centers on the validity of the defendant's waiver of his right to counsel and of his right against self-incrimination, therefore, it is unnecessary for us to determine whether Pierson's confession was voluntary.

There is no dispute that the defendant initiated the June 28 meeting. His statement, "Yeah, there's a lot of things I want to tell you ...," followed by an explanation of the shooting, indicates a "willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw, supra.* The more difficult question is whether the prosecution has shouldered the burden of proving that Pierson knowingly and intelligently relinquished his right to counsel and his right against self-incrimination.[3] The recorded transcript of the June 28 meeting establishes that Pierson was fully and adequately advised of his *Miranda* rights and that he understood them before he made any statements. However, waiver requires not merely comprehension but relinquishment of the defendant's rights. *Brewer v. Williams,* 430 U.S. at 404, 97 S.Ct. at 1242. The trial court made no specific findings that the defendant waived his right to counsel or his right against self-incrimination when the interview shifted from the burglary to the murder. There is also nothing in the record to indicate that the defendant knowingly and intelligently relinquished his rights when he made his confession. "A valid waiver will not be presumed ... simply from the fact that a confession was in fact eventually obtained." *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *People v. Harris,* 191 Colo. 234, 552 P.2d 10 (1976).

The circumstances surrounding the June 28 statement raise serious questions about whether the defendant knowingly and intelligently relinquished his rights.[4] Pierson, according to the record, made between ten and fourteen statements to the police after he had talked with his attorney. In fact, Pierson was so prone to talk with the police that his attorney attempted to obtain a protective order to silence him. Defense counsel told the district court that "[m]y client has displayed a proclivity for wanting to talk to the authorities in this case. He sends up notes and says I want to talk to you about my case.... It appears at times that I can't stop him from doing this." Doctor Plazak, the court-appointed

---

3. The defendant incorrectly argues that the standard of proof for a valid waiver is beyond a reasonable doubt. The burden of proof is on the prosecution to prove by clear and convincing evidence that the defendant waived his constitutional rights. *People v. Fish,* 660 P.2d 505 (Colo.1981); *People v. Schultz,* 200 Colo. 47, 611 P.2d 977 (1980); *see also People v. Traubert,* 199 Colo. 322, 608 P.2d 342 (1980).

4. Under *Miranda,* a suspect has the "undisputed right" to remain silent and to be free of interrogation "until he ha[s] consulted with a lawyer." *Rhode Island v. Innis,* 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980). The Fifth Amendment right identified in *Miranda* is the right to have counsel present at the custodial interrogation. If there is no interrogation, there can be no infringement of an accused individual's rights and there would be no occasion to determine if there was a valid waiver. *Edwards v. Arizona,* 451 U.S. at 485–486, 101 S.Ct. at 1885–1886. However, if an interrogation has occurred, the prosecution must establish a valid waiver of both the right to counsel and the right to remain silent. *Id.* at 486 n. 9, 101 S.Ct. at 1885–1886 n. 9.

psychiatrist, concluded that the defendant's repeated requests to talk to the police "were not the product of a knowing and intelligent waiver of rights but rather a function of his desire to manipulate those around him to gain attention, and to achieve status within the jail community." The trial judge refused to grant the protective order but did state that because of Dr. Plazak's remarks, he would probably grant a motion to suppress when considering future statements on an individual basis.

■ The defendant has a long history of mental health problems which required treatment at mental hospitals throughout the state. A month before the shooting the defendant voluntarily sought help at the Boulder Psychiatric Institute and was confined for his psychiatric problems. Dr. Plazak diagnosed Pierson as suffering from "borderline schizophrenia" and advised the court at the competency hearing that he was only "marginally competent" to proceed. Competency to stand trial requires that a defendant understand the nature and course of the proceeding against him and have the ability to participate and assist in his defense or cooperate with his defense counsel. Section 16–8–102(3), C.R.S.1973 (now in 1978 Repl.Vol. 8). *See Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1974); *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). In this case, there was serious question as to whether the defendant was competent to be tried.

■ The prosecution must prove by clear and convincing evidence that the defendant both understood and agreed to waive his right to counsel. At the June 28 meeting, both interrogating officers knew that the defendant was emotionally unstable and that he had a history of mental illness. Despite the officers' knowledge of the defendant's psychological infirmities, they purposefully applied pressure on Pierson during the interrogation to obtain a confession. *Miranda* warnings and the requirement of a valid waiver are meant to protect a defendant's right against self-incrimination from the "compulsion inherent

in custodial" interrogation and the police's purpose to "subjugate the individual to the will of [the] examiner." *Miranda v. Arizona,* 384 U.S. 436, 457–458, 86 S.Ct. 1602, 1619, 16 L.Ed.2d 694 (1966). The prosecution may not use either exculpatory or inculpatory statements stemming from custodial interrogation if the procedural safeguards which protect the privilege against self-incrimination are not followed. *Miranda v. Arizona, supra.* The prosecution must sustain its heavy burden of showing a valid waiver, and any ambiguity in determining whether a defendant has waived his rights must be interpreted against the prosecution.

■ In addition, the record shows that the detectives knew that Pierson had retained counsel, yet they questioned him in direct contravention of the district attorney's assurance that the police would notify defense counsel prior to any further interviews. The Sixth Amendment prohibits law enforcement officers from "deliberately eliciting" incriminating information from a defendant in the absence of counsel after a formal charge against the defendant has been filed. *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964). The government violates an accused's Sixth Amendment guarantee to the assistance of counsel by intentionally creating a situation likely to elicit an incriminating statement from the defendant without the protection of counsel. *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

■ We are unable to determine from the record or from the trial court's findings of fact whether the defendant intelligently and knowingly waived his right to counsel and his right against self-incrimination. The defendant's waiver of his rights when the discussion of the burglary was initiated by the defendant is insufficient to establish waiver of his rights after the conversation shifted from the burglary to the murder. Therefore, a hearing is required to determine whether, under the totality of the circumstances, Pierson knowingly and intel-

ligently waived his right to counsel and his privilege against self-incrimination.

Accordingly, we affirm the Court of Appeals in part, reverse in part, and return this case to the Court of Appeals with directions to remand to the district court for a new trial and for further hearings consistent with the directions contained in this opinion.

ROVIRA, J., concurs in part and dissents in part.

ROVIRA, Justice, concurring in part and dissenting in part.

I agree with that part of the majority opinion which holds that the statements made by the defendant on March 14 are admissible, and so much of Part III as disapproves the holding of the court of appeals that an express waiver is necessary to support a finding that an accused has relinquished the right to counsel. 670 P.2d at 774. However, I dissent from the majority's conclusion that a part of the defendant's March 14 statement should be suppressed and the remand for a further hearing on the June 28 statement.

An experienced trial judge spent the better part of two days in hearings on the motion to suppress. With reference to the March 14 statement, the trial court made the following findings which I quote in full because they express far better than I can the totality of the circumstances surrounding this defendant's arrest and statement.

"The testimony disclosed that the Defendant initially called in to report a suicide at a motel in Boulder. Based upon the officers' investigation, i.e. the position of the body, position and condition of the gun, and inconsistencies in Defendant's explanation, among other things the Defendant was arrested on a charge of First Degree Murder. Defendant does not argue that his arrest was illegal, and the Court finds probable cause for the arrest of the Defendant without a warrant. Therefore, any statements made cannot be suppressed because of illegality of arrest.

"Upon arrival at the booking room, Defendant was advised of his rights per *Miranda.* The rights were read from a written form and complied with legal requirements (People's Exhibit 'B'). Defendant understood his rights but declared he did not waive his rights and wanted to talk to his attorney first. Defendant had also been advised that he was arrested on suspicion of murder. The investigation stopped when Defendant said he wanted to talk to his attorney. Detective Sinclair then told the Defendant he was going to perform tests on his hands to see if he had recently fired a gun. Defendant then *volunteered* the information, and not in response to a question, that 'I fired a gun earlier in the evening' (of the murder). He further stated (not in response to a question) that he had fired a rifle about 7:00 p.m. at the Colorado University rifle range with an individual named 'Clay.' These statements were volunteered, not in response to questions, and are admissible.

"On the same date March 14, 1977, Defendant *requested* that he be allowed to talk to Detective Diezi, a friend, whom he had known over the years. Diezi came at the Defendant's request. The Defendant was again advised of his *Miranda* rights (as in the first advisement), said he had an attorney, wanted to waive his rights and gave a statement to Diezi. This interview was *at Defendant's request,* was voluntary; he waived his rights and the statement is admissible.

"On March 14, the Defendant also *requested* that he be allowed to talk to Detective Long, also a long time friend. He was again advised of his rights. Long asked the Defendant if he wished to talk with his attorney first. Defendant said he did, and he was permitted to call his attorney. After talking with his attorney, Defendant asked if he could have a P.R. Bond. Long replied, 'No.' Defendant then volunteered statements, *not in response to any questions.* The Court holds he waived his rights and made voluntary statements, which are admissible." (Emphasis in original.)

In connection with the June 28 statement the trial court found that although the defendant initially requested the opportunity to talk to the police about a burglary, he initiated the subject of the murder and wanted to talk about it. The trial court also found that when the interview began the defendant was again advised of his *Miranda* rights, "said he understood his rights, waived his rights and said he wanted to talk."

The trial court also determined that the interview lasted about one and one-half hours, the defendant's statement was logical, reasonable and not rambling, and the words and phrases used by the defendant indicated that he was thinking clearly and recalling times and incidents with precision. After making these extensive findings the trial court concluded that no undue pressure was used against the defendant and accordingly denied the motion to suppress.

In *People v. Thorpe*, 641 P.2d 935 (Colo. 1982), a case involving a defendant who was under 18 years of age, we set out certain basic principles concerning the admission of a confession. We noted that a confession must be voluntary, and the burden is on the prosecution to establish by a preponderance of the evidence that it was voluntarily made. We also held that the fact that a statement was obtained without notification of counsel and out of the presence of counsel does not by itself amount to an unconstitutional violation of the defendant's rights. Further, we reaffirmed the principle that a defendant could waive his right to counsel as well as his right to remain silent, but the waiver must be knowing and intelligent, although it need not be express.

The teaching of *Thorpe* is two-fold. First, the existence of a knowing and intelligent waiver is to be determined from the facts and circumstances surrounding the case. Second, the trial court should look at the totality of circumstances, and its findings of fact concerning the voluntariness of a confession will be upheld if supported by the record.

Most recently in *People v. Fish*, 660 P.2d 505 (Colo.1983), where we affirmed the suppression of statements made by the defendant, we took pains to affirm the oft-stated proposition that it is "for the trial judge to evaluate equivocal words or acts in the context of the relevant circumstances" and "an appellate court is in no position to weigh conflicting testimony presented to the trial court." We further stated that "[o]n review, we are bound by the trial court's findings of fact where they are supported by adequate evidence in the record." *Id.* at 509.

Here, the findings of the trial court find substantial support in the record, and its conclusion that the defendant waived his rights follows the principles laid down in *Thorpe*.

In my view the majority, in order to arrive at the conclusion it does, has disregarded the trial court's findings and substituted its own to support the conclusion that the totality of the circumstances requires suppression of part of the March 14 statement which necessitates a new trial, and the remand for a further hearing.

I dissent and would reverse the court of appeals.