The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

**Richard Frank SANDOVAL,** Defendant-Appellant.

No. 82CA0677.

Colorado Court of Appeals, Div. III.

Dec. 22, 1983.

Rehearing Denied Jan. 19, 1984.

Certiorari Denied Aug. 7, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Patricia A. Wallace, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Lee Jay Belstock, Denver, for defendant-appellant.

STERNBERG, Judge.

Following a jury trial, the defendant, Richard Frank Sandoval, was convicted of second degree burglary, conspiracy, and theft. Sandoval appeals, alleging that certain statements by him should have been suppressed. We reverse and remand for a new trial.

Sandoval and three co-defendants were arrested March 2, 1981, by several officers including a Detective Cribari on charges relating to the burglary of a jewelry store. Sandoval was arraigned on the burglary charges, and a preliminary hearing was held on March 30, 1981. Detective Cribari appeared and was cross-examined by Sandoval's attorney. Probable cause was found and Sandoval was released on bond.

In May 1981, Cribari saw Sandoval and his girlfriend in a park. According to Cribari, Sandoval appeared to be smoking a marijuana cigarette. Cribari also thought that the girl had been arrested for illegal possession of marijuana but had failed to appear in court, and believed that a warrant had been issued for her arrest.

Cribari drove around the block, but by the time he had returned, Sandoval and the girl had gone. However, he saw them a short time later, at which time he stopped and detained them. Cribari noticed that Sandoval had a "roach" clip attached to his belt loop and also noticed a green leafy substance protruding from the top of his pants pocket which he recognized as being marijuana. He arrested Sandoval for illegal possession of marijuana. A subsequent search revealed marijuana in Sandoval's pocket. Sandoval was placed in the police car, but the girl was released when it was determined there were no outstanding warrants for her.

Cribari advised Sandoval of his *Miranda* rights and then drove him to police headquarters, where Sandoval was again given the *Miranda* warnings as Cribari made out a summons. Cribari and Sandoval then engaged in a conversation which Cribari claimed began when Sandoval indicated he needed some "help" in some cases pending against him. Cribari said that, while he did not promise to "make a deal" for him, he did indicate the district attorney would be told if Sandoval provided any helpful information.

The conversation turned to the jewelry store burglary. During the course of this conversation Sandoval made several incriminating statements in response to questions from Cribari. When the conversation ended, Sandoval was issued a summons on the marijuana charge and released from custody.

On November 25, 1981, before Sandoval's trial in the burglary case, Paul Gallegos, one of his three co-defendants, appeared before the court for sentencing for his part in that crime. A woman who identified herself as Gallegos' mother handed his attorney a written statement in which Sandoval confessed to the burglary and absolved Gallegos of all guilt. The statement was shown to the court and admitted into evidence at the hearing. The court then gave the statement to the district attorney.

At Sandoval's trial, the incriminating statements made to Cribari after the arrest for marijuana possession, and the written

statement produced at the Gallegos hearing were introduced into evidence over objection. Sandoval was convicted and appeals, alleging error in the trial court's refusal to suppress these statements.

## I.

We address first the admissibility of the written statement adduced by Sandoval's co-defendant, Gallegos. Sandoval did not deny that he had written the statement, but argued that it was not voluntarily written, and called a fellow prisoner to testify on that issue. That witness said that he had seen Gallegos strike Sandoval twice in a jail cell, and then order him to write the statement.

■ The trial court found that the statement was voluntarily, intelligently and knowingly written. We agree with Sandoval that the trial court improperly shifted the burden of proof by requiring him to prove that the statement was involuntarily made, and therefore we reverse the conviction and remand for a new trial.

A review of the record demonstrates that the trial court misapplied the standard by which to judge the voluntariness of a confession. The court first stated: "Let's hear [Sandoval's attorney]. I think he's got the burden here. It's his motion." The court then indicated it felt that since the statement had been obtained by a private citizen, not by a police officer or other person in authority, the burden was not on the state to prove the statement was voluntary.

At the beginning of the statement, Sandoval wrote that he was preparing it voluntarily and was "only writing this letter on my own behalf." At the end of the statement, he wrote: "That is the whole truth. I write this on my own free will." The court seemed to place much significance on these recitations, and found that there was "no credible evidence here that it [the statement] was involuntary."

■ Confessions are not admissible into evidence for any purpose unless they are made voluntarily. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Gimmy v. People,* 645 P.2d 262 (Colo.1982); *People v. Thorpe,* 641 P.2d 935 (Colo.1982). Once a confession is tendered, the burden is on the prosecution to establish by a preponderance of the evidence that the statement was made voluntarily. *People v. Fish,* 660 P.2d 505 (Colo.1983); *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

■ The rule is the same whether the statements were made to a police officer or a private citizen. *Hunter v. People,* 655 P.2d 374 (Colo.1982); *People v. Amato,* 631 P.2d 1172 (Colo.App.1981). The trial court, in considering whether a statement was voluntarily written, must "shut from [its] mind any internal evidence of authenticity that a confession itself may bear." *Lego v. Twomey, supra.*

If this statement is offered when this case is re-tried, its admissibility must be tested by the court on this basis.

## II.

■ With respect to the statements Sandoval made to Detective Cribari after his arrest for possession of marijuana, we direct that before allowing the statements into evidence the court should determine whether there was a valid waiver of the right to have counsel present. In making this determination the court must conduct a hearing and make findings on the totality of the circumstances surrounding the making of the statements. *People v. Pierson,* 670 P.2d 770 (Colo.1983).

Relevant circumstances to be considered include the fact that at the time of the marijuana arrest Detective Cribari knew of the pendency of the burglary charges, and of the fact that Sandoval was represented by counsel. Also of importance are the circumstances of the arrest for the marijuana offense, Cribari's mistaken impression concerning a warrant being outstanding for Sandoval's girlfriend as a reason for stopping the pair, as well as the atypical conduct of arresting Sandoval for possession of a very small amount of marijua-

na when a summons could have been issued instead. Finally, of relevance are the circumstances under which the interrogation concerning marijuana possession "happened" to turn into a discussion of the burglary charges.

If the trial court, as finder of fact, determines that Detective Cribari intentionally created a situation likely to induce Sandoval to make incriminating statements without the assistance of counsel, his Sixth Amendment right to counsel was violated, *see People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (1976), and in such event the statements should not be received in evidence. Only if the court finds there was a voluntary and valid waiver of the right to counsel should the statements be received in evidence on retrial.

The judgment is reversed and the cause is remanded for a new trial.

TURSI and BABCOCK, JJ., concur.