Richard Guy DEEDS, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 85SC336.

Supreme Court of Colorado, En Banc.

Dec. 21, 1987.

Rehearing Denied Jan. 11, 1988.

David F. Vela, Colorado State Public Defender, Janet Fullmer Youtz, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. For-man, Sol. Gen., Eric Perryman, Asst. Atty. Gen., Nathan B. Coats, Sp. Asst. Atty. Gen., Denver, for respondent.

ERICKSON, Justice.

Petitioner Richard Guy Deeds was charged with two counts of sexual assault on a child and was convicted of the second count. The court of appeals affirmed the conviction, 712 P.2d 1055, and Deeds petitioned for certiorari. We granted certiorari on two issues: (1) Whether the trial court erred by refusing the defendant's tendered instruction on the standard of proof to be used by a jury to determine the voluntariness of the defendant's statements; and (2) whether the trial court erred by admitting rebuttal testimony that was allegedly irrelevant to the charges at trial. We affirm the court of appeals.

I.

Deeds was charged with two counts of sexual assault on a child, section 18–3–405, 8 C.R.S. (1978), arising from allegations made by Deeds' ten-year-old stepdaughter, the victim in this case. The victim testified that on February 27, 1982, during an evening thunderstorm, she was planning on sleeping with her mother, Susan Deeds, when Richard Deeds grabbed her and insisted that she sleep with him. According to the victim, Deeds held her mouth, rubbed his penis all over her body, and stuck it in her mouth. The victim also testified that on or about March 8, 1982, she accompanied Richard Deeds to a junkyard where Deeds looked at a magazine containing pictures of naked women. Deeds and the victim then returned to the house of Deeds' parents where Deeds stuck his penis out of a hole in his pants and made her hold it. According to the victim, after each incident Deeds threatened to beat her if she told anyone about what happened.

A hearing was held pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), to determine the admis-

sibility of the Deed's statements. At the hearing the trial court found that on March 25, 1982, Willard Earl Goff, Sheriff of Baca County, and two other armed officers went to Deeds' home to make the arrest at approximately 9:00 p.m. Although there was conflicting testimony between the defendant and the sheriff as to what occurred during the arrest, the trial court found that the sheriff physically seized the defendant and made the arrest pursuant to a valid warrant. Before Deeds read the warrant and the information, Goff advised Deeds of his rights and asked him "what happened with [the victim]?" Deeds replied, "I plead guilty. It's all my fault." After reading the warrant and information, Deeds said: "I didn't do all these things. Susie [Deeds] would have to prove all these things." The trial court concluded that Deeds' statements were voluntary, and the sheriff testified to the statements made by Deeds at trial.

Ann Powers, the victim's school teacher, presented her attendance book and testified that the victim had been at school on March 8, 1982. Richard Deeds testified that after school he drove the victim and a group of children from the Bethell Fellowship into Lamar for a roller skating party. While in Lamar, he made a purchase at a Gibsons store and bought dinner at the local Burger King. A cancelled check dated March 8, 1982, written to Gibsons, was entered into evidence.

On rebuttal, the victim stated that David Krause, a neighbor, had seen her crying after the incident on March 8, 1982. The prosecution then called Krause as an unendorsed, nonsequestered rebuttal witness. Krause testified that he saw the victim with Richard Deeds at Deeds' parent's home on March 6, 1982. He also testified that the victim was crying and that Deeds had a hole in his trousers near his front pocket. No objection was raised by the defense to the rebuttal testimony of either the victim or David Krause. Valerie Deeds, the defendant's grandmother, was called on surrebuttal and presented testimony indicating that the assault could not have happened on March 6, 1982. After both sides rested, the defendant for the first time complained about the prosecution's rebuttal evidence. Deeds requested a mistrial claiming that the information failed to sufficiently apprise him of the offense because the date of count II on the information was March 8, 1982, but the evidence at trial demonstrated that the assault occurred on March 6, 1982. The motion was denied. The jury returned a verdict of guilty to the second count, and Deeds was sentenced to two years imprisonment.

## II.

Deeds contends that the trial court erred by refusing his tendered instruction setting out the standard of proof to be used by the jury in determining the voluntariness of his confessions as beyond a reasonable doubt. The trial court submitted the following instruction to the jury:

Extra-judicial statements or confessions of one on trial for the commission of a crime must be voluntary, otherwise they are not admissible against him, and the burden is upon the prosecution to prove, by a preponderance of the evidence, that any extra-judicial statements or confessions offered in evidence by them are voluntary; therefore, if you shall not find and believe from all the evidence in this case by a preponderance of the evidence, that the extra-judicial statements or confessions alleged to have been made by the defendant were voluntary, then you shall disregard such statements or confessions entirely.

By "preponderance of the evidence" is meant that evidence which is most convincing and satisfying in the controversy between the parties, regardless of which party may have produced such evidence.

The trial court interpreted *People v. Smith*, 179 Colo. 413, 500 P.2d 1177 (1972), as adopting *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), and holding that the trial judge had only to find by

a preponderance of the evidence that the defendant's statement was voluntary to justify submission of the statement to the jury. The court of appeals agreed, holding that the appropriate standard of review for voluntariness was by a preponderance of the evidence.

## A.

█ It is axiomatic that a criminal defendant is deprived of due process of law if his conviction in any way is based upon an involuntary confession. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); *Kwiatkoski v. People*, 706 P.2d 407 (Colo.1985); *People v. Freeman*, 668 P.2d 1371 (Colo. 1983); *Feldstein v. People*, 159 Colo. 107, 410 P.2d 188 (1966). Prior to trial, a defendant seeking to prohibit the admission of a confession is entitled to a determination of whether the statement is in fact involuntary and therefore inadmissible as evidence against the defendant. *Jackson*, 378 U.S. 368, 84 S.Ct. 1774; *Kwiatkoski*, 706 P.2d 407. If the trial court determines that a confession is voluntary and therefore admissible as evidence against the defendant, an issue arises concerning the role of the jury: should the jury also assess the voluntariness of the confession, or should the jury merely consider the credibility of the confession. Generally, courts have adopted one of two rules: the orthodox rule, "under which the judge himself solely and finally determines the voluntariness of the confession," or the Massachusetts rule, "under which the the jury passes on voluntariness only after the judge has fully and independently resolved the issue against the accused." *Jackson*, 378 U.S. at 378, 84 S.Ct. at 1781–1782; *see generally McCormick on Evidence*, 430–34 (Cleary 3d ed. 1984) (discussion of procedures for determining the admissibility of confessions); 3 Wigmore, *Evidence* § 861 (Chadbourn rev. 1970 & 1987 Supp.) (same).

While acknowledging the uncertainty of the law in Colorado, Deeds claims that af-

ter the trial court initially determines voluntariness in accord with *Jackson v. Denno*, a jury is permitted to redetermine voluntariness pursuant to the Massachusetts rule. Deeds further argues that when the jury considers whether a confession is voluntary, the required standard of proof is beyond a reasonable doubt. The prosecution, on the other hand, asserts that Colorado follows the orthodox rule and that the jury does not determine whether Deeds' confession was voluntary.

## B.

In *Kwiatkoski v. People*, 706 P.2d 407 (Colo.1985), we acknowledged that "[p]rior decisions of this court contain statements which arguably support both [the orthodox and Massachusetts] positions." *Id.* at 408 n. 4. It is well established that to be admissible, a confession must be voluntary, and that, at least initially, the question of admissibility is for the court to decide. *Whitman v. People*, 170 Colo. 189, 460 P.2d 767 (1969); *Osborn v. People*, 83 Colo. 4, 262 P. 892 (1927); *Fincher v. People*, 26 Colo. 169, 56 P. 902 (1899). In *Osborn*, this court stated:

> The jury, of course, is not permitted to pass upon the question of admissibility. The court having admitted the confession into evidence, it is for the jury to determine the weight to which it is entitled. The jury may accord to it great weight, little weight, or no weight at all, depending upon the circumstances surrounding the making of the confession.

*Osborn*, 83 Colo. at 29, 262 P.2d at 901; *see also Fincher*, 26 Colo. 169, 56 P. 902 ("the truth or falsity of the confession, or the weight which should be given it, were all questions peculiarly within the province of the jury to determine"). Our earliest cases, therefore, adhered to the orthodox rule.

In *Bruner v. People*, 113 Colo. 194, 156 P.2d 111 (1945), however, this court applied the Massachusetts rule by stating that the judge must preliminarily determine the voluntariness of a confession, but must then submit the issue to the jury.

The jury is charged with the duty of determining in the last and final analysis whether the confession is freely and voluntarily made, and if the jury determines that it is not freely and voluntarily made, it is proper to disregard all testimony relative to the confession.

The ruling of the judge on the voluntariness of the confession is not at all binding or conclusive on the jury and it may properly disregard the view taken by the judge, and, as the trier of all questions of fact, conclude that the confession was not free and voluntary, and having reached this conclusion from the evidence, it is the jury's duty to entirely disregard it.

*Id.* at 217, 156 P.2d at 122.

In *Roper v. People,* 116 Colo. 493, 179 P.2d 232 (1947), the court quoted extensively from both *Osborn* and *Bruner,* but demonstrated no preference for either approach. Since that time the cases have followed one of three approaches: (1) the orthodox rule espoused in *Osborn;*[1] (2) the Massachusetts rule alluded to in *Bruner;*[2] or (3) like *Roper,* those cases that make reference to both the orthodox rule and

Massachusetts rule or blur the line between the two doctrines.[3] *See generally Kwiatkoski,* 706 P.2d at 408 n. 4 (cataloging the cases).[4]

The roles of the judge and jury embodied by the Colorado Rules of Evidence shed light upon these conflicting lines of authority. Rule 104(a) and (c) call upon the judge to determine the admissibility of evidence and, in the case of confessions, to do so *in camera.* CRE 104(e) permits the introduction of evidence to the jury bearing on weight or credibility. The credibility of the witnesses and the weight to be given to their testimony are, of course, matters for the jury's determination. *People v. O'Donnell,* 184 Colo. 434, 521 P.2d 771 (1974). As the trier of fact, the jury is free to give evidence great weight, little weight, or no weight. Under the orthodox rule, the trial judge, outside the presence of the jury, hears all relevant evidence and then rules on the voluntariness of the confession. If the confession was involuntary, it may not be presented to the jury. If the judge concludes that the confession was voluntarily given, he then admits it into evidence and the jury considers voluntariness only

---

1. For cases applying the orthodox rule, *see, e.g., People v. Shearer,* 181 Colo. 237, 508 P.2d 1249 (1973); *Lauderdale v. People,* 162 Colo. 36, 424 P.2d 373 (1967); *Gallegos v. People,* 145 Colo. 53, 358 P.2d 1028 (1960), *rev'd on other grounds,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962).

2. For cases following the Massachusetts rule, *see, e.g., Reed v. People,* 174 Colo. 43, 482 P.2d 110 (1971); *Feldstein v. People,* 159 Colo. 107, 410 P.2d 188 (1966); *Martz v. People,* 114 Colo. 278, 162 P.2d 408 (1945).

3. *See, e.g., Compton v. People,* 166 Colo. 419, 425, 444 P.2d 263, 266 (1968) ("The fact that the jury thereafter determines the weight to be given a confession, or as is sometimes the practice, the fact that the issue as to the voluntariness of a confession ... is also submitted to the jury...."); *Read v. People,* 122 Colo. 308, 221 P.2d 1070 (1950) (Claiming that it is solely the duty of the court to determine admissibility, but adding that "where there is a conflict in the evidence as to the voluntariness of a confession, it is proper that the court instruct the jury that if they do not believe the confession was made freely and voluntarily, they are at liberty to disregard it...."); *Downey v. People,* 121 Colo. 307, 215 P.2d 892 (1950) ("Whenever there is

evidence, not sufficient to require exclusion of the alleged confession, but sufficient to raise a question as to the weight to which it is entitled at the hands of the jury, the court must refer the question of the voluntarity of the confession to the jury under proper instructions.").

4. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), abolished the New York rule, which at the time was the third major procedure for determining the voluntariness of confessions. The *Jackson* case illustrated the difficulties of precise classification of jurisdictions in terms of their acceptance of one of the three procedural approaches to the determination of the voluntariness of a confession. *See id.* at 378 n. 9, 84 S.Ct. 1782 n. 9; *id.* at 436 n. 7, 84 S.Ct. at 1812 n. 7 (Harlan, J., dissenting). Commentators have also acknowledged the difficulty of applying the various classifications. *See, e.g.,* Meltzer, *Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury,* 21 U.Chi.L.Rev. 317, 323–24 (1954) ("The formal distinctions between the New York and Massachusetts procedures are often blurred in appellate opinions.").

as it affects the weight and credibility of the confession. *Jackson v. Denno*, 378 U.S. 368, 411, 84 S.Ct. 1774, 1799, 12 L.Ed. 2d 908 (1964) (Black, J., dissenting in part, concurring in part). This approach is consistent with the traditional roles of the judge and jury that are embodied in CRE 104.

With these principles in mind, it is easier to reconcile our prior cases that are not readily categorized as falling within either the orthodox rule or the Massachusetts rule. In *Baker v. People*, 168 Colo. 11, 449 P.2d 815 (1969), the court stated:

> Whenever there is evidence, not sufficient to require exclusion of the alleged confession, but sufficient to raise a question as to the weight to which it is entitled at the hands of the jury, the court must refer the question of the voluntarity of the confession to the jury under proper instructions.

*Id.* at 18, 449 P.2d at 818 (quoting *Downey v. People*, 121 Colo. 307, 317, 215 P.2d 892, 897 (1950)); *see also Roper v. People*, 116 Colo. 493, 179 P.2d 232 (1947); *Martz v. People*, 114 Colo. 278, 162 P.2d 408 (1945). Consistent with the orthodox approach, *Baker* can be interpreted as meaning that the trial court makes a legal determination of whether the confession is voluntary, and then evidence regarding the weight and credibility of the confession is submitted to the jury. Confusion arises because the rule espoused in *Baker* can also be interpreted as meaning that the jury should be allowed to redetermine whether the confession was voluntary. *See, e.g., Downey*, 121 Colo. 307, 215 P.2d 892.

■ In our view, the latter interpretation—the procedure employed under the Massachusetts rule—improperly allows the jury to overrule a legal determination made by the trial judge. The Massachusetts approach permits a judge to decide that a confession was voluntarily given and submit it to the jury, and then allows the jury to find that the confession was involuntary. The jury, while attempting to disregard the confession, may then convict the defendant. It is, however, questionable whether a jury can adequately isolate and determine the issue of voluntariness, much less, upon finding that the confession was involuntary, abide by the court's instruction to disregard the confession in passing on the guilt of the defendant.[5] Moreover, despite the trial court's threshold finding that the

---

5. Justice Jackson expressed skepticism for such instructions when he wrote: "The naive assumption that prejudicial effects can be overcome by instructions to the jury, ... all practicing lawyers know to be an unmitigated fiction." *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring); *see* Meltzer, *supra* n. 4 at 319–30 (1954). Dean Wigmore referred to the Massachusetts rule as "the heretical view." In explaining why he felt it was a heresy to send the issue of voluntariness to the jury, Wigmore stated:

> To say that it is a question for the jury may mean one of two things. It may mean that the confession goes in any case to the jury to accept or to reject or to give such weight as the jury chooses; this practically abolishes all the foregoing limitations. But it may, and commonly does, mean that the jury may be allowed to *measure it by the foregoing legal tests,* and to reject it as a judge would if the tests are not fulfilled. This is decidedly improper; first, because it makes abject surrender of the fixed principle that all questions of admissibility are questions of law for the judge only; secondly, because the confession rules do not attempt to measure the ultimate value of a given confession, and the tribunal which is to weigh all evidence finally ought not to be artificially hampered by them; thirdly, because the jury is not familiar enough with them to attempt to employ them. Nevertheless, many courts today hold that, after the judge has applied the rules and admitted the confession, the jury [is] to apply them again, and *by that test* may reject it. This unpractical heresy fails to appreciate the elementary canon of admissibility, and in that aspect its judicial extension has been a discouraging circumstance.

3 Wigmore, *Evidence* § 861, at 571–72 (Chadbourn rev. 1970) (footnotes omitted). Professor Meltzer stated that while the Massachusetts procedure appears to give the defendant greater protection than the orthodox procedure by permitting independent determinations of voluntariness by both judge and jury, "the double protection may be more apparent than real.... The prospect of an ultimate jury determination may diminish the judge's sense of responsibility and his care with respect to his initial determination." Meltzer, *supra* n. 4 at 329 (footnote omitted).

confession was voluntary, a jury's finding that the confession was involuntary and its subsequent conviction of the defendant is incompatible with the proscription against a conviction being based upon an involuntary confession. This unpalatable position can be avoided if, in an *in camera* hearing, a trial judge, mindful that he cannot delegate responsibility for determining voluntariness to the jury, concludes that as a matter of fact and law the confession under consideration was voluntarily given by the defendant. If the judge concludes that the confession was voluntary, the confession is then submitted to the jury solely for consideration of the credibility of the testimony relating to the confession and the weight to be given to the testimony and the confession. This procedure comports with due process and insures that a conviction will not be based, in whole or in part, upon an involuntary confession. Accordingly, we expressly adopt the orthodox rule and disclaim our prior cases that employed the Massachusetts rule.

### C.

■ The defendant claims the trial court erred by not instructing the jury that, in determining the issue of voluntariness, the standard of proof is beyond a reasonable doubt. Because the jury does not have to make a voluntariness determination, the trial court need not submit instructions on the issue. "[T]he appropriate standard for plain-error review is whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987). While the trial court erred in submitting instruction number ten to the jury,[6] the instruction inured to the benefit of the defendant and the error was harmless. The United States Supreme Court in *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d

**6.** *See supra* pp. 1268–1269.

618 (1972), concluded that due process demands only that the prosecution prove that a confession was voluntary by a preponderance of the evidence. While states may impose a higher standard, *id.,* we have held that admissibility of a confession need only be established by a preponderance of the evidence, *People v. Fordyce,* 200 Colo. 153, 156, 612 P.2d 1131, 1133 (1980); *People v. Schearer,* 181 Colo. 237, 243, 508 P.2d 1249, 1253 (1973). From the record, it is clear that the evidence presented to the trial court met this requirement.

Deeds relies upon COLJI–Crim 4:04 (1983) in urging the court to adopt the beyond a reasonable doubt standard. COLJI–Crim 4:04 (1983) provides:

The burden is upon the prosecution to prove, beyond a reasonable doubt, that any out-of-court statements made by the defendant were voluntary. If you believe from all the evidence in this case that the statements alleged to have been made by the defendant were not voluntary, or if you entertain a reasonable doubt on this point, you shall disregard the statements entirely.

■ The rationale behind 4:04 was to urge trial judges to pursue the safer course by applying the higher standard of beyond a reasonable doubt. The effect of the instruction, however, is to have the jury determine the voluntariness of a confession by a higher standard than is required of the trial court. Because we conclude that the trial court alone must find that a confession is voluntary by a preponderance of the evidence, we expressly disapprove of COLJI–Crim 4:04 (1983).

While special credibility instructions are normally to be avoided because they unduly focus the attention of jurors upon certain evidence, *People v. Rubanowitz,* 688 P.2d 231, 244 (Colo.1984), the nature of confession testimony may require such instructions. A confession is "powerful and persuasive evidence" of the declarant's guilt. D. Louisell & C. Mueller, *Federal Evidence* § 44, at 331 (1977). It is often

the critical component of the prosecution's case and, therefore, "should be received with *caution* and subjected to careful scrutiny." *People v. Ford*, 60 Cal.2d 772, 800, 388 P.2d 892, 911, 36 Cal.Rptr. 620, 639 (1964), *cert. denied*, 377 U.S. 940, 84 S.Ct. 1342, 12 L.Ed.2d 303 (1964); *see also, United States v. Sauls*, 520 F.2d 568 (4th Cir.), *cert. denied*, 423 U.S. 1021, 96 S.Ct. 459, 46 L.Ed.2d 393 (1975). It has been said that "[n]o other class of testimony affords such temptations or opportunities for unscrupulous witnesses to torture the facts or commit open perjury, as it is often impossible to contradict their testimony at all, or at least by any other witness than the [defendant] himself." *Ford*, 60 Cal.2d at 800, 338 P.2d at 911, 36 Cal.Rptr. at 639 (citation omitted); *see People v. Beagle*, 6 Cal. 3d 441, 492 P.2d 1, 99 Cal.Rptr. 313 (1972).

We stated in *Osborn v. People*, 83 Colo. 4, 262 P. 892 (1927), that once the court admits a confession in evidence, the jury must "determine the weight to which it is entitled." *Id.* at 29, 262 P. at 901. Depending upon the circumstances surrounding the confession, "the jury may accord to it great weight, little weight, or no weight at all." *Id.* In *Shearer v. People*, 181 Colo. 237, 508 P.2d 1249 (1973), we relied on *Osborn* in holding that the failure of the trial court judge to properly instruct the jury on the weight to be given the defendant's confession was error, although not such as to amount to a constitutional violation requiring a new trial. *Id.* at 244–45, 508 P.2d at 1253.

To avoid the possibility of having the jury give undue emphasis or weight to a confession, it is appropriate for a trial judge, in the exercise of his discretion, to give to the jury a cautionary instruction concerning defendant's confession. Accordingly, we hold that the trial judge may properly instruct the jury that, although the confession has been admitted into evidence, it is the sole prerogative of the jury to determine what weight, if any, is to be given to the confession and any testimony directly related to the confession.

### III.

Deeds also claims that the trial court erred in admitting the prosecution's rebuttal testimony because it was inconsistent with evidence presented in the prosecution's case in chief. The information filed by the prosecution stated that the assault which formed the basis for count II occurred "on or about March 8, 1982." In his opening statement, the prosecution identified the date of the second assault as "on or about March 8." At no time did the defendant ask for a bill of particulars. At trial, the victim testified that she was sexually assaulted at her grandparents' house when she was alone with the defendant. The victim testified that she thought the assault occurred on Monday, March 8, but was not sure. The defendant presented evidence at trial suggesting that the assault could not have occurred on March 8. On rebuttal, the prosecution called the victim and David Krause. Together, their testimony indicated that the assault occurred on Saturday, March 6. The defendant claims that this rebuttal testimony substantially prejudiced him because the date of the offense was a material element. We disagree.

In *People v. Adler*, 629 P.2d 569 (Colo. 1981), we set forth the general rule on this issue:

In cases where the defendant made no showing that he was impaired in his defense to the charge at trial or in his ability to plead the judgment as a bar to a subsequent proceeding, we have held that a variance between the specific date of the offense as alleged in the information and the date as proved at trial is not fatal.

*Id.* at 571; *see, e.g., Marn v. People*, 175 Colo. 242, 486 P.2d 424 (1971) (three-day variance); *Albritton v. People*, 157 Colo. 518, 403 P.2d 772 (1965) (five-day variance). The defendant claims that the prosecution established in its case in chief that the date of the offense was Monday, March 8, 1982. An examination of the record, however, discloses that the prosecutors case in chief did not establish March 8 as the date on which the crime alleged in count II occurred. The prosecutor identified the date of the second incident as "on or about March 8" in the information and in his

# 1274

opening statement. The victim herself demonstrated her uncertainty as to the day of the week during her testimony.[7] The prosecution also called David Krause as an unendorsed, nonsequestered rebuttal witness. The defendant did not object to his testimony and did not request a continuance. Instead, the defendant presented evidence to show the assault could not have occurred on March 6. Under the circumstances, the defendant has not demonstrated that his ability to prepare and present a defense has been impaired.

In *Moore v. People*, 171 Colo. 338, 344, 467 P.2d 50, 53 (1970), we stated that a party need not anticipate an opposing party's defense testimony, rather a party "is entitled to introduce any competent evidence to explain, refute, counteract or disprove the proof of the other party." *See also Taylor v. Mazzola*, 150 Colo. 553, 375 P.2d 96 (1962) (such rebuttal evidence is admissible even if it tended to support plaintiff's case in chief). Here, in his case in chief, the defendant was able to demonstrate that the second sexual offense could not have occurred on March 8, 1982. On rebuttal, the prosecution properly attempted to counteract this testimony, while striving to prove that the incident occurred on or about March 8, 1982. Accordingly, we agree with the conclusion of the court of appeals that the prosecution's rebuttal testimony was not reversible error.

Judgment affirmed.

---

7. On direct examination the following exchange transpired:

Q: Okay. What day of the week was that [the junkyard incident]?
A: It was a Monday.
Q: How do you know?
A: That's when I went with my sister.
Q: Are you sure it was a Monday?
A: No. Not for sure it was a Monday.

During cross-examination the victim further demonstrated her confusion concerning the date of the second assault:

Q. [D]o you know about Monday, March the 8th, 1982, do you know if it was a school day?
A. Well, I am not sure sure [sic], because on some days we can't go to school on Monday and some days we did, so I am not positive about that.
Q: Do you recall going to school on the morning of March 8th, 1982?
A: I can't remember if I did or if I didn't.
Q: Did you eat dinner at school that day?
A: I can't remember.
Q: Do you remember being picked up at school by Rick Deeds ... after school on Monday, March the 8th?
A: No, I know I wasn't picked up.
Q: Do you remember ever going to a skating party in Lamar on Monday, March the 8th, 1982?
A: No.