21CA1666 Peo v Rogers 01-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 21CA1666
El Paso County District Court No. 20CR3368
Honorable William B. Bain, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Daveon Artez Rogers,

Defendant-Appellant.

---

JUDGMENT AND ORDER AFFIRMED

Division III
Opinion by JUDGE DUNN
Gomez and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

---

Philip J. Weiser, Attorney General, Joshua J. Luna, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Stephen Arvin, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1      A jury convicted defendant, Daveon Artez Rogers, of first degree murder, tampering with a deceased human body, and two counts of tampering with physical evidence. Because of those convictions, the trial court revoked Rogers's probation in four unrelated cases. Rogers appeals both the convictions and the probation revocations. We affirm.

## I.     Background

¶ 2      Rogers and E.K. shared two children and lived together until January 2020 when E.K. began living with another man. After E.K. left, the children lived with Rogers, but E.K. filed a proceeding seeking joint custody. The domestic relations court scheduled a hearing for the custody case in March 2020.

¶ 3      But on March 8 — before the scheduled hearing — E.K. and her car went missing. Later that month, teenagers found E.K.'s body in a plastic storage crate with a missing handle at the bottom of a cliff near Gold Camp Road (outside of Colorado Springs). A few months after that, police found E.K.'s car in a Colorado Springs neighborhood. In it, police discovered the missing handle from the storage crate along with Rogers's ID card.

¶ 4     During an initial police interview, Rogers said E.K. came to his apartment on March 8 to pick up the children for a few hours.  He then claimed that, after E.K. returned with the children, the two got into an argument, and E.K. left.

¶ 5     Also during the interview, Rogers consented to a search of his electronic devices.  Rogers's Google search history showed that, before E.K. disappeared, he had searched topics like "[h]ow to get away with a murder," "[h]ow to kill someone and make it look like accident," "[h]ow do murder investigations work in Colorado Springs," "[w]hat time does gold camp close," and "how long does it take to choke someone out."  And after she disappeared, Rogers searched for "[h]ow to get out of the country without a passport."  The devices also showed two YouTube videos about how to perform choke holds.  The coroner ruled E.K.'s death a homicide and concluded that she died in a manner consistent with manual strangulation.

¶ 6     Police later arrested Rogers and interviewed him a second time.  Rogers initially maintained his innocence, but after being confronted with incriminating evidence, he confessed to choking E.K. in his apartment, putting her body in a storage crate, putting

the crate in her car, driving to Gold Camp Road, pushing the crate off a cliff, and abandoning her car in a different location in Colorado Springs.

¶ 7 As relevant, the prosecution charged Rogers with first degree murder, tampering with a deceased human body, and two counts of tampering with physical evidence.

¶ 8 The jury convicted Rogers as charged. The trial court sentenced him to a controlling sentence of life in prison without the possibility of parole and, because of these convictions, revoked his probation in four unrelated cases.

¶ 9 On appeal, Rogers primarily contends that the trial court erred by refusing to suppress his confession. He also raises two instructional challenges and a prosecutorial misconduct claim. And, finally, in the event we reverse his convictions, he asks us to reinstate his probation sentences.

## II. The Motion to Suppress

¶ 10 Rogers contends that his confession was involuntary because it (1) resulted from "hours of intense police interrogation"; (2) "was fed to him by police"; and (3) conflicted with other evidence and was

therefore "unreliable." Thus, he says the trial court erred by refusing to suppress it. We disagree.

## A. The Suppression Hearing

¶ 11  Before trial, Rogers moved to suppress the confession he made during the second interview. He argued only that the confession was involuntary, not that it was false.

¶ 12  At the suppression hearing, the two detectives who had interviewed Rogers testified, and the prosecution introduced the recorded video interview. Detective Brent Jacobsen testified that he first interviewed Rogers one-on-one and advised him of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966). Detective Jacobsen explained that Rogers appeared to understand the advisement and agreed to speak with him. He described the interview as "casual" and said that Rogers never asked to stop the interview.

¶ 13  Detective Jerry Schiffelbein then testified that he joined the interview to initiate a "direct confrontation" with Rogers about certain evidence, particularly the reports from Rogers's electronic devices. From those reports, Detective Schiffelbein stated that he covered a "few specific points but not nearly all of it." Despite confronting Rogers, Detective Schiffelbein said that he didn't yell at

4

Rogers. And he explained that Rogers wasn't handcuffed during the interview and, at one point, that Rogers voluntarily demonstrated on the detective the choke hold he had used on E.K.

¶ 14 After the hearing, the court viewed the recorded interview three times. It then denied the motion to suppress, finding that Rogers's confession was voluntary.

## B. Standard of Review

¶ 15 We review a trial court's suppression order as a mixed question of fact and law, meaning we defer to the court's factual findings if supported by the record but review its legal conclusions de novo. *People v. Cerda*, 2024 CO 49, ¶ 22. When, as here, the statements sought to be suppressed are recorded, we independently review the recording. *See People v. Kutlak*, 2016 CO 1, ¶ 13.

## C. Rogers's Confession Was Voluntary

¶ 16 To be admissible as evidence, a defendant's statements must be voluntary. *See Cerda*, ¶ 36. A statement is involuntary if (1) the defendant's will was overborne by coercive police conduct and (2) that coercion played a significant role in inducing the statement. *See id.* at ¶ 37.

¶ 17    To assess voluntariness, we consider the totality of the

circumstances, including

- whether the defendant was in custody;

- whether the defendant was free to leave;

- whether the defendant was aware of the situation;

- whether the police read *Miranda* rights to the defendant;

- whether the defendant understood and waived *Miranda* rights;

- whether the defendant had an opportunity to confer with counsel or anyone else before or during the interrogation;

- whether the statement was made during the interrogation or volunteered later;

- whether the police threatened the defendant or promised anything directly or impliedly;

- the method or style of the interrogation;

- the defendant's mental and physical condition just before the interrogation;

- the defendant's educational background, employment status, and prior experience with law enforcement and the criminal justice system;

- the length of the interrogation;

- the location of the interrogation; and

- the physical condition of the location where the interrogation occurred.

*Id.* at ¶ 38; *People v. Sanders*, 2023 CO 62, ¶ 14.

¶ 18    After reviewing the recorded interview and considering the totality of the circumstances, we conclude that Rogers's confession was voluntary.

¶ 19    True, Rogers's interview took place at the police station, and he was in custody and not free to leave.  But Rogers knew the gravity of the situation.  Before he confessed, the detectives told him that they were investigating E.K.'s death and that he was "under arrest for [E.K.'s] death."  And Rogers had previous experience with the criminal justice system.  Indeed, before questioning, Detective Jacobsen advised Rogers of his *Miranda* rights, and Rogers confirmed that he had been advised of his rights before, understood those rights, and agreed to waive them.

¶ 20    During questioning, Rogers was alert, responsive, and coherent, and nothing suggested that he was under the influence of drugs or alcohol.  Rogers responded appropriately to questions, pushed back occasionally, maintained his composure, and showed no sign of physical or emotional distress.  He never asked to consult with counsel (or anyone else).  And neither detective directly or indirectly threatened or promised Rogers anything for his confession.

¶ 21    The interview conditions were also appropriate.  The interview occurred in the middle of the day in a reasonably sized room. Rogers wasn't handcuffed or otherwise restrained.  Only one detective questioned Rogers for most of the interview, and all but about forty-five minutes of the interview was nonconfrontational. Each detective had a handgun that, while visible, remained holstered.  The detectives gave Rogers food and water, allowed him to leave the room to use the bathroom, and provided multiple breaks.  With breaks, the interview lasted about four hours and forty-five minutes.

¶ 22    Under these circumstances, we reject Rogers's argument that his confession resulted from "hours of intense police interrogation."

To be sure, for the roughly forty-five minutes when Detective Schiffelbein joined the interview, the detective directly confronted Rogers with some of the incriminating evidence against him. And during that period, the detectives alternated between sympathy for Rogers at how E.K. had treated him and disbelief that he wasn't involved in E.K.'s death. They also accused Rogers of lying and implored him to tell the truth because his children were "going to ask questions about what happened to their mom" and "so maybe people can understand you're not a dark monster."

¶ 23    But these interview tactics, including forceful questioning, are neither uncommon nor inherently coercive. *See People v. Theander*, 2013 CO 15, ¶ 44 (concluding that "it was not coercive for police . . . to suggest that [the defendant's] children would want to know that [the defendant] had helped find their father's killer"); *People v. Medina*, 25 P.3d 1216, 1224-25 (Colo. 2001) (explaining that the "technique of alternating between sympathy and disbelief and hand[ing] the questioning off" between officers does not, without more, "render a defendant's statements involuntary"); *People v. Villarreal*, 131 P.3d 1119, 1123-24 (Colo. App. 2005) (concluding that the defendant's statements were voluntary despite

9

"aggressive and insistent" questioning by two detectives for two hours). And even when the interview became confrontational, Rogers remained composed and calm, exhibiting no distress. Only when confronted with incriminating evidence did he confess. Thus, the shift from conversational to confrontational interview tactics did not overbear Rogers's will.

¶ 24 To the extent Rogers claims the confession wasn't voluntary because the detectives shared certain facts and evidence about the murder with Rogers, leading to a "false" confession, we don't see how that approach overbore Rogers's will. After all, it generally isn't coercive "to inform a suspect of the potential charges or factual allegations against him," *Cerda*, ¶ 43, and even ploys or trickery are insufficient to render a confession involuntary, *see Illinois v. Perkins*, 496 U.S. 292, 297 (1990).

¶ 25 Nor are we persuaded that Detective Jacobson impliedly promised Rogers leniency by saying, "The only thing that can help you today is to tell us the truth, tell us what really happened, tell us why it happened." Encouraging a defendant to tell the truth untethered to any outcome isn't a promise of leniency. *See People v. Zadran*, 2013 CO 69M, ¶¶ 15-19 (concluding an officer's

10

statement that "it would be in [the defendant's] best interest to talk to [the officer]" was a "generic statement" that "did not amount to any specific threat or promise"); *People v. Springsted*, 2016 COA 188, ¶¶ 32-33 (concluding an officer's statement that the defendant would receive "more slack" if he was honest wasn't an implied promise because it wasn't linked to the "potential receipt of any particular benefit"). In any event, Detective Schiffelbein immediately clarified, "We're not saying that . . . you're never going to face consequences for what happened. We don't know that." Thus, the detectives didn't promise Rogers leniency in exchange for a confession.

¶ 26 Finally, to the extent that Rogers points to inconsistencies between his confession and some of the evidence, as well as his comments that he was struggling to remember what happened the day of E.K.'s death, these details don't render his confession involuntary.[1] The voluntariness of his confession turns on whether the detectives coerced Rogers and whether that coercion induced

---

[1] Rogers seems to argue that the confession was "unreliable" because some details of the confession matched what the detectives told him while other details did not. We focus on whether the discrepancies impacted the confession's voluntariness.

his confession. *See Cerda,* ¶ 37. That the details didn't match the evidence in every respect or that Rogers's memory was imprecise goes to the confession's weight and credibility, not its admissibility. And it's the jury's role to determine the weight and credibility of a confession. *People v. Lopez,* 946 P.2d 478, 482-83 (Colo. App. 1997); *see also People v. Flippo,* 159 P.3d 100, 105-06 (Colo. 2007) ("[G]enerally speaking, defendants may attack the credibility or reliability of a confession and allow the jury to determine any weight that should be given to such statements.").[2]

¶ 27 All this said, the trial court didn't err by refusing to suppress Rogers's confession.

### III. Proposed Jury Instruction

¶ 28 Before trial, Rogers tendered several proposed jury instructions, including one regarding the voluntariness of his confession, which stated:

---

[2] The recorded interview confirms that Rogers provided details about the murder that the detectives had not shared with him, including how he specifically choked E.K. and that he kicked the storage crate off a cliff. And when the interview resumed after a break, Rogers volunteered additional clarifying details, telling Detective Jacobsen that he was "just trying to remember everything cause . . . it's been some time, and I smoke too much. So, I'm just trying to remember everything that happened that day."

In evaluating [Rogers's] statements to police you should consider [voluntariness].

Courts determine voluntariness by considering the totality of the circumstances under which the statements were given, looking at the significant details surrounding and inhering in the interrogation under consideration. . . . Courts examine both the defendant's ability to resist coercive pressures and the nature of the police conduct, using a nonexclusive list of factors that includes:

(1) whether the defendant was in custody;
(2) whether the defendant was free to leave;
(3) whether the defendant was aware of the situation;
(4) whether the police advised the defendant of his or her Miranda rights;
(5) whether the defendant understood and waived Miranda rights;
(6) whether the defendant had an opportunity to confer with counsel or anyone else prior to or during the interrogation;
(7) whether the statement was made during the interrogation or volunteered later;
(8) whether the police threatened [the] defendant or promised anything directly or impliedly;
(9) the method or style of the interrogation;
(10) the defendant's mental and physical condition just prior to the interrogation;
(11) the length of the interrogation;
(12) the location of the interrogation; and
(13) the physical conditions of the location where the interrogation occurred. . . .

Finally, [w]hen coercion produces a series of statements, a court need not parse and dissect

them to determine which statements may or may not be inculpatory. Instead, the entire interrogation that follows the point at which the police conduct becomes coercive under the totality of the circumstances must be suppressed in its entirety.

¶ 29 The court rejected that proposed instruction, observing that it had already ruled that Rogers's confession was voluntary and that "it's not within the jury's province to decide the voluntariness or involuntariness of an alleged confession that the [court] has found should be admitted into evidence."

¶ 30 But the court accepted Rogers's theory of defense instruction, which read:

> [Rogers] asserts that he is not guilty of Murder in the First Degree. He further asserts that the statement he made to police was false, not reliable, and not credible. [Rogers] generally denies that he was in any way involved in the death of [E.K.] and asserts that the State has failed to prove that he caused the death of [E.K.] beyond a reasonable doubt.

¶ 31 The court also accepted Rogers's confession-specific credibility instruction, which provided:

> Although the confession in this case has been admitted into evidence, it is the sole prerogative of the jury to determine what weight, if any, is to be given to the confession

14

and any testimony directly related to the confession.

¶ 32     Rogers maintains that the trial court erred by rejecting his proposed instruction regarding the voluntariness of his confession. We disagree.

## A.     Standard of Review

¶ 33     While we review de novo whether a particular jury instruction correctly states the law, we review a trial court's decision to give a particular instruction for an abuse of discretion. *People v. Garcia*, 2021 COA 65, ¶ 45, *aff'd*, 2023 CO 41.

## B.     The Court Didn't Err by Rejecting Rogers's Voluntariness Instruction

¶ 34     Rogers argues the court erred by rejecting his proposed voluntariness instruction because the instruction was "necessary for the jury to adequately assess whether Rogers['s] confession was reliable or arose from coercion."

¶ 35     The problem with this argument, however, is that it wasn't the jury's responsibility to assess whether Rogers's confession was voluntary. Rather, it's for the court to decide whether a confession is voluntary and admissible. *See Deeds v. People*, 747 P.2d 1266, 1271-72 (Colo. 1987). "If the [court] concludes that the confession

15

[is] voluntary" — as was the case here — "the confession is then submitted to the jury solely for consideration of the credibility of the testimony relating to the confession and the weight to be given to the testimony and the confession." *Id.* at 1272. Thus, "[b]ecause the jury does not have to make a voluntariness determination, the trial court need not submit instructions on the issue." *Id.* The trial court therefore didn't err by rejecting Rogers's proposed voluntariness instruction.

¶ 36    Even so, Rogers says that without his proposed voluntariness instruction, the jury had no way "to adequately assess the credibility of Rogers['s] confession." Using language from *Deeds*, however, the trial court specifically instructed the jury that it was for the jury to determine what weight — if any — to give Rogers's confession. *See id.* at 1273. And Rogers doesn't explain — and we don't see — how his proposed confession-specific credibility instruction, together with his theory of defense instruction, failed to allow the jury to adequately assess the credibility of his confession. Indeed, in closing argument, defense counsel explained why the jury shouldn't credit the confession and emphasized that the

16

confession-specific credibility instruction allowed it to decide what weight to assign the confession.

¶ 37    Shifting gears, Rogers characterizes his proposed voluntariness instruction as a "companion to the theory-of-defense instruction." As a result, he says the court had an affirmative obligation to cooperate with defense counsel to either correct the proposed voluntariness instruction or incorporate its substance into another instruction. *See, e.g., People v. Martinez*, 2020 COA 141, ¶ 82. But the court separately instructed the jury on Rogers's theory of defense. And because the jury doesn't determine the voluntariness of a confession, the court had no obligation to either fix the proposed voluntariness instruction or incorporate its substance elsewhere. *See People v. Cox*, 2023 COA 1, ¶ 42.

¶ 38    Finally, we don't consider Rogers's undeveloped assertion that, by rejecting his proposed voluntariness instruction, the court violated his right to present a defense and have the jury accurately instructed on his theory of defense. *See People v. Liggett*, 2021 COA 51, ¶ 53 (acknowledging appellate courts don't address undeveloped arguments), *aff'd*, 2023 CO 22.

¶ 39    Given all this, we conclude that the trial court didn't abuse its discretion by rejecting Rogers's proposed voluntariness instruction.

### IV.    Prosecutorial Misconduct

¶ 40    We next reject Rogers's contention that the trial court erred by permitting the prosecutor to commit misconduct during closing argument.

¶ 41    During closing argument, the prosecutor said:

> We talked in jury selection about what is reasonable doubt. You heard both sides share with you ideas about how this can be the cornerstone of your decision-making process. This instruction is the literal definition under the law. It's not a vague, speculative, or imaginary doubt but one that would cause you to hesitate in matters of importance to yourself. What is a vague, speculative, or imaginary doubt? It's some other random person of our 700,000 citizens here who have somehow at the same time snuck into [Rogers's] apartment, done what we know happened to [E.K.], and then somehow disappeared into the night while also having access to her car, her keys, her cell phone, and her body.
>
> That is pure speculation because the reality is there's not a shred of evidence that suggests anything to that.

¶ 42    Though Rogers didn't object to this argument at trial, he now contends that these statements "grossly distorted" the reasonable

18

doubt standard by informing the jury that, to find reasonable doubt, Rogers had to present evidence that someone else killed E.K.

¶ 43    The prosecutor, however, neither misstated the law nor shifted the burden of proof. The prosecutor's explanation of reasonable doubt tracked the jury instruction and was legally correct. And, more fundamentally, the prosecutor never argued that Rogers had the burden of proof. Rather, the prosecutor simply emphasized the lack of evidence supporting Rogers's theory that someone else killed E.K. The prosecutor then argued that, without evidence to support it, Rogers's theory was "pure speculation" and therefore did not create a reasonable doubt concerning his guilt. Linking the lack of evidence to the reasonable doubt definition is proper argument. *People v. Walker*, 2022 COA 15, ¶ 41 ("Commenting on the lack of evidence supporting a defense theory does not shift the burden of proof."); *accord People v. Santana*, 255 P.3d 1126, 1131 (Colo. 2011).

V.    Modified Unanimity Instruction

¶ 44    Rogers asks us to reverse the two convictions for tampering with physical evidence because, in his view, the trial court erred by

19

not sua sponte giving the jury a modified unanimity instruction. We conclude there was no plain error.

### A. Standard of Review and Applicable Law

¶ 45 A criminal defendant is entitled to a unanimous jury verdict. *People v. Archuleta*, 2020 CO 63M, ¶ 20; § 16-10-108, C.R.S. 2024. Unanimity is required "only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed." *Archuleta*, ¶ 20 (citation omitted).

¶ 46 When, however, the prosecution presents evidence of multiple distinct acts, any one of which could constitute the crime charged, and the jury could reasonably disagree about which act was committed, the trial court must either (1) require the prosecution to elect the transaction that it relies on for the conviction or (2) give the jury a modified unanimity instruction advising that it must unanimously agree the defendant committed the same act or all of the acts. *Id.* at ¶¶ 21-22; *People v. Hines*, 2021 COA 45, ¶ 50.

¶ 47 But neither a prosecutorial election nor a modified unanimity instruction is required when a defendant is charged with crimes

20

occurring in a single transaction and the prosecution proceeds to trial on that basis. *Archuleta*, ¶ 23; *Hines*, ¶ 50.

¶ 48 We review de novo whether the trial court should have given a modified unanimity instruction. *See Hines*, ¶ 48. Because Rogers didn't request a modified unanimity instruction, this claim is unpreserved, and we review for plain error. *See People v. Wester-Gravelle*, 2020 CO 64, ¶ 27. To be plain, the alleged error must be obvious, meaning the action challenged on appeal contravened a clear statutory command, a well-settled legal principle, or Colorado case law. *Id.* at ¶ 28.

### B. The Court Didn't Plainly Err by Not Giving a Modified Unanimity Instruction

¶ 49 Rogers identifies three possible acts that could have supported the two counts of tampering with physical evidence: (1) that he disposed of E.K.'s clothes; (2) that he abandoned E.K.'s car; and (3) that he cleaned a blood stain in his apartment. Because the prosecution didn't specify which of the three acts it relied on, and because the jury could have reasonably disagreed about which acts Rogers committed, he now says the court should have given the jury a modified unanimity instruction.

21

¶ 50 In response, the prosecution argues that a modified unanimity instruction wasn't required because the two tampering counts occurred in a single transaction. More specifically, the prosecution says that Rogers performed the three acts on the same day, against the same victim, and as part of a single objective to kill E.K. and conceal her death.

¶ 51 But we need not decide whether the court erred by not giving a modified unanimity instruction because any such error was not obvious and therefore not plain. *See People v. Burdette*, 2024 COA 38, ¶ 32.

¶ 52 True, as Rogers emphasizes, it's unclear which of the three acts the prosecution relied on for the two tampering counts. The prosecution's closing argument was imprecise on this point, and the verdict forms didn't specify which act each count corresponded to. That lack of precision apparently led to the jury asking the court,

"Why are there two (2) charges for tampering with physical evidence, and what are the specifics for each charge?"[3]

¶ 53     This gives us some pause.  But a modified unanimity instruction isn't required when a defendant is charged with crimes occurring in a single transaction and the prosecution proceeds to trial on that basis.  *Archuleta*, ¶ 23; *Hines*, ¶ 50.  And what constitutes a single transaction when there are multiple counts of the same charge (or similar charges) is hazy.  *See People v. Collins*, 730 P.2d 293, 301 (Colo. 1986) (concluding that modified unanimity instruction was not required for attempted second degree murder and first degree assault charges because "evidence was presented regarding a single transaction"); *accord People v. Jacobs*, 91 P.3d 438, 443 (Colo. App. 2003) (applying *Collins* to conclude that two counts of soliciting for child prostitution arose from a single transaction because, despite evidence of numerous

---

[3] The court responded to the jury as follows: "The evidence in this case has been completed.  You must base your verdicts on the evidence that has or has not been presented for each of these two charges."  Defense counsel agreed with this response.  To the extent Rogers suggests the court responded inadequately to the jury's question, this contention is undeveloped, and we don't consider it.  *See People v. Liggett*, 2021 COA 51, ¶ 53, *aff'd*, 2023 CO 22.

communications, those communications concerned arranging one "date"); *People v. Hanson*, 928 P.2d 776, 779-80 (Colo. App. 1996) (applying *Collins* to conclude that two counts of felony menacing arose from a single transaction because, despite two separate confrontations, the confrontations involved the same victim, occurred in the same location a few minutes apart, and concerned the same dispute).[4]

¶ 54    Because E.K.'s murder and the tampering counts arguably occurred as part of a single criminal transaction, it was not obviously wrong for the trial court to not, on its own, give a modified unanimity instruction.  And, at any rate, Rogers doesn't explain why the tampering acts — which occurred on the same day and against the same victim — were not part of a single criminal transaction.  *See People v. Ryan*, 2022 COA 136, ¶ 24 (concluding

---

[4] At least one division of this court has held that a trial court plainly erred by not giving a modified unanimity instruction under similar circumstances.  *See People v. Serna-Lopez*, 2023 COA 21, ¶¶ 28-38 (concluding a prosecutorial election or modified unanimity instruction was required because the defendant was charged with two sentence enhancers that each involved a distinct act).  But an error must be plain at the time of trial, *see People v. Crabtree*, 2024 CO 40M, ¶¶ 4-8, and *Serna-Lopez* was announced after Rogers's trial.  Thus, it has no bearing on our analysis.

failure to give modified unanimity instruction was not obvious because, among other things, the defendant didn't explain why his conduct was not part of a single criminal transaction).

¶ 55 For these reasons, we conclude that the trial court didn't plainly err by not sua sponte offering a modified unanimity instruction.

## VI. Probation Revocations

¶ 56 Recall that, because of Rogers's convictions in this case, the trial court revoked his probation in four unrelated cases. Because we're affirming his convictions, we necessarily affirm the probation revocations.

## VII. Disposition

¶ 57 We affirm the judgment and the order revoking Rogers's probation sentences.

JUDGE GOMEZ and JUDGE TAUBMAN concur.